463 So.2d 665 (1985)
STATE of Louisiana
v.
Michael J. GORDON.
No. KA 1870.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1985.
*667 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Crim. Div., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Harold Douglas, New Orleans, for defendant-appellant.
Before GARRISON, BARRY and LOBRANO, JJ.
GARRISON, Judge.
The defendant, Michael J. Gordon, was convicted of second degree murder in violation of LSA-R.S. 14:30.1[1] and was sentenced to life in prison without benefit of parole, probation or suspension of sentence. Defendant appeals.
On February 10, 1982, at approximately 10:50 a.m., Janice Spencer was found dead in her home on Thalia Street. According to Dr. Monroe Samuels, a pathologist who conducted the autopsy in this case, Spencer had died as a result of multiple stab wounds sometime between February 8th at 12:30 p.m. and February 9th at 12:30 p.m. Her body was found on the kitchen floor of her apartment. She had been bound and gagged with pieces of clothing. There were no signs of forced entry or burglary in the apartment and, other than a broken crock pot, the apartment was undisturbed.
The police were summoned to the scene by Sister Maureen Carroll of St. Monica's School. Letoya McGary, the young daughter of the victim and a student at St. Monica's, arrived at school an hour after school had started on February 10, 1982. As a secretary attempted to phone the girl's mother, Letoya responded that her mother would not answer if called and that there was blood all over the floor. She also told the secretary that someone named "Bullock" had done this to her mother. The secretary summoned the principal, Sister Maureen Carroll, who accompanied the little girl to her home. Upon their arrival, Sister Maureen heard a radio playing and found Janice Spencer dead on the kitchen floor. She then called the police and went upstairs where she found three small children, Letoya's sisters, who were wet and smelled of urine. After the police arrived, Sister Maureen accompanied Letoya to the police station where the little girl selected the defendant's photograph from a lineup and identified him to police as the perpetrator of this murder.
Michael Gordon was arrested that afternoon at his home. A sweater, jacket and jeans worn by the defendant were seized and tested at the police crime lab. Some human blood stains were found on the sleeve of the jacket but the amount found was insufficient to obtain a blood typing. Police lab technicians were also unable to determine how long the blood had been on the jacket.
At trial, the State's main witness was seven year old Letoya McGary. Letoya testified that she knew a man called Bullock whose real name was Michael Gordon. She identified the defendant as this same *668 person. She also stated that her mother and Gordon were good friends. Letoya testified that on the evening of February 8, 1982, her mother and Bullock were fighting about money and that Bullock tied her mother up and stabbed her many times. She later repeated that she was positive that the defendant was the person who she had watched stab her mother. Letoya testified that after the stabbing, she went upstairs with her three younger sisters and remained there until the morning of February 10, 1982 when she reported to St. Monica's School.
The defense presented several witnesses who testified in the defendant's behalf. The defendant's employer, Larry Scott, and his wife, Mae, testified that the defendant had reported to work as usual on February 8th, 9th and 10th. Both Mr. and Mrs. Scott identified the clothes worn by the defendant on all three days. This testimony was elicited by the defense to show that the clothes worn by the defendant on the day of the murder contained only a small amount of blood which Mr. Scott claimed could have been the result of minor cuts sustained on the job.
Two friends of the defendant, Alfred Johnson and Frank Coleman, testified that they, along with Gordon and a man named Kenny White, went over to Janice Spencer's apartment at approximately 8:00 p.m. on February 8, 1982. Gordon, Johnson and Coleman all testified that they had a friendly visit with Spencer that evening and that the men left at approximately 10:30 p.m. Gordon was allegedly dropped off at his home between 10:30 p.m. and 10:45 p.m.
Several members of the Gordon family testified that the defendant returned home between 10:30 p.m. and 10:45 p.m. that evening and that he did not leave the house again until the next morning when he left for work.
A review of the record reveals that there are no errors patent.
Although not alleged as an assignment of error, the sufficiency of the evidence to support defendant's conviction must be reviewed. State v. Raymo, 419 So.2d 858 (La.1982). Viewing the evidence in the light most favorable to the prosecution, the court must find that there was sufficient evidence presented so that a rational juror could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In this case, an eyewitness to the murder testified that the defendant was the person who tied up Janice Spencer and stabbed her repeatedly. The credibility of this witness and the credibility of alibi witnesses presented by the defense were determinations within the discretion of the jury. Viewing the evidence in the light most favorable to the prosecution, sufficient evidence was presented for a jury to find that the defendant was guilty beyond a reasonable doubt.
On appeal, the defendant alleges twelve assignments of error. However, assignments of error two, four, ten and eleven have not been briefed; therefore, they are deemed abandoned. State v. Smith, 430 So.2d 31 (La.1983).

ASSIGNMENT OF ERROR # 1
The defendant contends that it was reversible error for the trial court to deny defendant's motion to have seven year old Letoya McGary evaluated by an expert psychologist or psychiatrist to determine, not whether she knew that it was wrong to tell a lie, but whether she was capable of testifying factually and accurately under the circumstances. According to the defense, the fact that the child stayed upstairs for two days after allegedly witnessing her mother's murder indicates abnormal behavior. The defense argues that a psychiatric evaluation was needed to determine whether or not the child was capable of separating facts from fiction.
The record in this case indicates that the child was evaluated by a clinical psychologist prior to trial. After this evaluation, Dr. Edward Shwery reported that Letoya McGary was competent to testify in this trial. The trial judge questioned the witness and also determined that she was *669 competent to testify. A trial judge is vested with wide discretion in determining the competency of a witness and, on appeal, his ruling is entitled to great weight. State v. Edwards, 419 So.2d 881 (La.1982).
Defendant makes the argument that Letoya McGary's testimony was inconsistent with her testimony given at defendant's first trial which resulted in a hung jury. Because the transcript of this first trial is not in evidence, it cannot even be considered.
The defendant did not show that a need existed to have Letoya McGary reevaluated to prove her competency to testify at trial. The trial judge properly denied this request and this assignment of error is without merit.

ASSIGNMENT OF ERROR # 3
In this assignment, defendant argues that it was error for the trial court to overrule defendant's objection to the admission of hearsay testimony from witnesses Jean Jones and Sister Maureen Carroll, the secretary and principal at St. Monica's School. Specifically, the defendant contends that it was error for the trial court to allow these two witnesses to testify as to what Letoya McGary said to them on the morning of February 10, 1982.
LSA-R.S. 15:496 provides:
When the testimony of a witness has been assailed as to a particular fact stated by him, similar prior statements, made at an unsuspicious time, may be received to corroborate his testimony.
The State urges that the testimony of these two witnesses falls within this exception to the hearsay rule. The defense argues that this statute is inapplicable to this situation because the statute requires an assault on a particular facet of a witness' testimony rather than an assault on the witness' general credibility.
The transcript of the trial court proceedings indicates that on cross-examination, the defense made a strong effort to show that the child's testimony at trial was inconsistent with her statements made to Jean Jones and Sister Maureen Carroll, the first persons to whom she had spoken after her mother's murder. Therefore, this testimony was properly admitted to corroborate Letoya's testimony at trial.
Additionally, the Louisiana Supreme Court has justified the admission of the first report of a crime by a child under LSA-R.S. 15:447, the res gestae exception to the hearsay rule. In these cases, the court has held that "the better rule is that the original complaint of a young child is admissible when the particular facts and circumstances of the case indicate that it was a product of the shocking episode and not a fabrication.' State v. Prestridge, 399 So.2d 564 (La.1981); State v. Adams, 394 So.2d 1204 (La.1981); State v. Noble, 342 So.2d 170 (La.1977). While these cases all dealt with a child's first report of a sex offense, the rationale of this rule is applicable to the instant situation. Jean Jones and Sister Maureen Carroll were the first people to whom Letoya McGary had the opportunity to speak following the traumatic event which she had witnessed. Furthermore, the hearsay testimony concerning Letoya's witnessing of her mother's murder was obviously the product of a shocking episode and was certainly not a fabrication. Therefore, this testimony was properly allowed and this assignment of error is without merit.

ASSIGNMENT OF ERROR # 5
The defendant claims that it was error for the trial court to deny the defendant's motion for mistrial or to have the jury panel dismissed based upon the allegedly prejudicial remarks of juror number 217. During voir dire and prior to the swearing in of the jury, juror number 217 asked the trial court a question concerning the portion of the sentence for second degree murder which states that a defendant's sentence of life imprisonment is to be served without benefit of parole, probation or suspension of sentence. Juror number 217 specifically asked if there were circumstances in which the person would not have to spend the rest of his life in jail if convicted. The trial judge responded that, if convicted, *670 those were the conditions under which the defendant would be sentenced. When asked by the district attorney if this would influence his decision in any way, juror number 217 replied, "No. I just wish I could be sure it would be life imprisonment." At that time, defense counsel moved for a mistrial or, alternatively, to have that jury panel dismissed. The trial judge denied defense counsel's requests after receiving negative responses from the other prospective jurors when asked if they were influenced by the remarks of juror number 217. The trial judge also admonished the prospective jurors to disregard the remarks made by juror number 217.
In this juror's questions, he merely restated the penalty provision of the statute dealing with second degree murder. Defense counsel has not shown any prejudice to the defendant because of this interchange between juror number 217, the trial judge and the district attorney. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR # 6
In this assignment, the defendant alleges that it was error for the trial court to deny defendant's objection to the State's alleged questioning of prospective jurors about the evidence and about whether or not they would require more evidence than the State presented in order to convict the defendant. Specifically, the defense objected to the State's questions to the prospective jurors concerning whether or not they would be able to convict the defendant solely on the basis of a seven year old child's testimony.
The allowance of this questioning was not error on the part of the trial judge. The district attorney did not disclose the nature of the child's testimony other than that she was a witness to the crime. Rather, he was merely trying to ascertain if the jurors would automatically doubt the child's testimony because of her age. This is distinguishable from the case cited by the defense in which counsel attempted to present hypothetical questions concerning the evidence of the case in order to ascertain the juror's responses to these questions. State v. Clark, 325 So.2d 802 (La. 1976). In this case, the district attorney was merely trying to ensure that a fair and impartial jury would be impaneled. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 7
The defendant argues that it was error for the trial court to overrule the defendant's objection to the State's use of leading questions in its examination of Letoya McGary. Specifically, the defense objected to the State's question in which Letoya was asked if she knew a man named Bullock to which she responded affirmatively and gave the man's real name, Michael Gordon. First, this question arguably was not a leading question because the child had a choice of answers. Second, there has been no showing of prejudice to the defendant as a result of this question. If this question was leading, it should be noted that the determination as to whether a leading question is admissible is largely within the discretion of the trial court. State v. Prestridge, supra. In State v. Carthan, 377 So.2d 308 (La.1979), the Supreme Court pointed out that "the rule forbidding leading questions is not so rigid that it should not yield somewhat to the discretion of the trial judge in the examination of a very young or timid witness". Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR # 8
In this assignment of error, the defense contends that the trial court erred in sustaining the State's objection to defendant's questioning of a witness on cross-examination as to hearsay testimony. The defense claims that certain hearsay testimony was allowed by this same witness, Jean Jones, on direct examination by the State and that, therefore, the defense should also have been allowed the opportunity to elicit hearsay testimony from this witness. The particular question asked by the defense on cross-examination was whether or not Jean Jones had been told by Letoya McGary that the defendant was aware that Letoya was watching while he *671 committed this violent act. The State's objection to this question was sustained on the basis that it assumed something into evidence to which the witness had not testified. This objection was not sustained on hearsay grounds as suggested by the defendant. The trial judge did not err in sustaining the State's objection to the defense's question. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 9
The defense contends that the trial court erred in overruling the defendant's objection to the State's use of leading questions in its examination of Sister Maureen Carroll. The defense objected to the following exchange:
Q. Okay. Were you able to tell what photograph it was that Letoya picked out?
A. Whichever one it was I signed it immediately as she picked it out. But I didn't look at it.
Q. In other words, the photographs were not displayed for your benefit but rather for Letoya?
Mr. Douglas: Your Honor, he's leading.
The Court: I know, but it's the only way we're going to get to the point. It's not any harm to your client or to anybody.
As previously stated, the determination of whether a leading question is admissible is largely within the discretion of the trial judge. State v. Prestridge, supra. Because the defendant was not prejudiced by this exchange, the trial judge did not err in allowing this testimony. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 12
In his final assignment of error, the defendant argues that the trial court erred in denying his motion for mistrial after the State, in its closing argument, argued that defense witnesses had lied on the stand. Argument on the credibility of a witness is proper where the facts bearing on the witness' credibility appear in the record. State v. Sayles, 395 So.2d 695 (La.1981). In his closing argument, the district attorney pointed out the many inconsistencies in the defense witnesses' statements and suggested the possibility that these witnesses may have lied to help the defendant. The district attorney's conclusion, drawn from these inconsistencies, that these witnesses were not credible was proper closing argument according to Code of Criminal Procedure Article 774. This assignment of error is without merit.
For the reasons stated above, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:30.1 states:

Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.