LOBRANO, Judge.
Defendant, Joseph Bennett, was charged by grand jury indictment with the December 24, 1987, second degree murder of Gladys Ferdinand, a violation of La.R.S. 14:30.1.
Defendant was arraigned on February 8, 1988 and pled not guilty. On July- 6, 1988, defendant was found guilty as charged by a twelve-person jury. On July 20, 1988, defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. FACTS:
On December 24, 1987, at approximately 5:00 a.m., Jackie Winding, who lived across the street from defendant and Ms. Ferdinand, was awakened by the sound of a gunshot. She heard someone hollering “I have been shot” and then heard a door open. She got up and looked out of the window. She saw defendant come out of his window onto his porch. He stood up on the railing between his porch and the ad *399 joining porch and put something on the roof.
The police were summoned. Officers Joseph Williams and Madeline Baptiste responded to the call. When they arrived at defendant’s home, an emergency medical unit was already there. Other officers were in the process of placing Ms. Ferdinand into the ambulance to be taken to the hospital where she died a short time later of a gunshot wound to the chest. Officer Williams entered the apartment where defendant lived with Ms. Ferdinand and her three children, Brandy, age 8, Irma, age 3 and Celeste, the youngest. Defendant was in the hallway between the kitchen and bedroom consoling the three children. Defendant told Officer Williams that he arrived home from work shortly before the shooting. Ms. Ferdinand prepared him a plate of food which he took into the bedroom. He and Ms. Ferdinand then began to watch television. The three children were asleep in the same room. Defendant stated that when Ms. Ferdinand got up to adjust the television set, a shot was fired from the courtyard below which entered through the bedroom window and struck Ms. Ferdinand in the chest.
The bedroom window was broken. However, Officer Williams found no glass beneath the window nor on the bed. There was no bullet hole in the screen, nor was a shell casing found in the courtyard where defendant claimed the shot came from. There was no other physical evidence to corroborate defendant’s version of what happened.
Officer Williams noticed dark stains on the sheets and on the back of defendant’s white pants. He also found an empty gun holster in the closet in the front room.
At approximately 8:30 a.m., Officer Michael Lauer further investigated the scene. He was directed by neighbors to search the’ roof. There he found a .38 caliber revolver and four live rounds later identified as belonging to defendant. One shot had been fired from the revolver.
After the victim was taken to the hospital, her three children were taken to a neighbor’s house to stay until their aunt could pick them up. It was at this time that Irma related the following to her eight year old sister, Brandy. Irma stated that defendant came home and their mother fixed him something to eat. He stated he did not want anything to eat. He then went into the front room and returned to the bedroom. He asked their mother a question, the content of which is unknown, then he counted to five at which time the gun was fired. The defendant then went out onto the porch through the window, climbed on top of an old television set that was on the porch, put the gun on the roof and then returned. He then went outside and began knocking on the neighbor’s door.
Defendant appeals his conviction and sentence asserting that the trial court erred by allowing Brandy Ferdinand to testify regarding the hearsay statement made to her by her sister, Irma.
Following a competency hearing, the trial court ruled Brandy was competent to testify, but Irma was not.
Brandy testified that on the morning of the murder, she, Irma and Celeste were asleep in the bedroom they shared with defendant and their mother. It was when Irma woke her up that Brandy noticed her mother was injured. Shortly thereafter the police arrived and her mother was taken to the hospital. She testified that she and her sister were then sent to the neighbors house where their aunt picked them up a “short time” later. It was while at the neighbor’s house that Irma told Brandy what she witnessed. Brandy testified that she did not see Irma speaking to anyone else before telling her what she witnessed. In addition, Brandy testified that defendant owned a gun and that he kept it in the front room closet in a holster. She further testified that the bedroom window was broken by Celeste long before the shooting.
Defendant contends that Brandy’s testimony concerning what Irma told her should not have been admitted because the statements were too far removed in time from the shooting to constitute part of the res gestae exception to the hearsay *400 rule.[1] Defendant concedes that our Supreme Court has expanded the res gestae exception to allow hearsay testimony of the original complaint of a young child even if not made immediately after the crime when the particular facts of the case indicate that the statement was a product of a shocking episode and not a fabrication.[2] However, defendant contends that this applies only to sexual abuse cases where the child is the victim. Thus, he argues, expansion of the res gestae exception in the instant case is inapplicable. We disagree.
In State v. Gordon, 463 So.2d 665 (La. App. 4th Cir.1985) defendant was convicted of second degree murder. On the night of February 8, 1982, the defendant and his girlfriend got into an argument at his girlfriend’s house. Defendant tied her up, stabbed her to death and then left. The murder was witnessed by the victim’s seven year old daughter, who, after the defendant left, went upstairs with her three younger sisters and remained there until the morning of February 10th, when she arrived at school one hour late. When the school secretary tried to call the mother, the child stated that her mother could not answer the phone, that there was blood all over the floor and that a man named “Bullock” (later identified as the defendant) did something to her mother. The principal accompanied the child home where the victim’s body was found. At trial, the school secretary and principal testified as to the statements made to them by the child two days following the murder. On appeal the defendant asserted that it was error for the court to allow the school secretary and principal to testify with regards to the hearsay statement made by the child. This court expanded the logic used by our Supreme Court in the rape cases. We stated:
“While these cases all dealt with a child’s first report of a sex offense, the rationale of this rule is applicable to the instant situation.”
Brandy testified that although the police asked her if she had seen anything, no one questioned Irma. There was no evidence presented that Irma spoke to either the police or anyone else prior to telling Brandy what she witnessed. Witnessing the murder of a parent by a step parent can instill the same type of fear and reluctance to speak which causes a child who is a victim of sexual abuse to remain silent until such time as they feel safe. In the instant case, Irma confided to her older sister what she witnessed concerning her mother’s death after being taken from the murder scene to a neighbor’s house and away from defendant. Irma’s statements to Brandy were certainly a product of a shocking episode and not a fabrication. Therefore, this testimony was properly allowed.
Furthermore, Irma’s statements were corroborated to a great extent by the testimony of Jackie Winding, the neighbor who saw defendant place something on the roof. Any prejudice that may have occurred by Brandy’s testimony was certainly cured.
For the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.
BARRY, Judge, dissents with reasons.
Does the exception to the hearsay rule permit statements by an incompetent 3 year old to be quoted at trial by an 8 year old? I think not.
*401 The res gestae exception to hearsay was greatly expanded in several sex abuse cases. See State v. Prestridge, 399 So.2d 564 (La. 1981); State v. Adams, 394 So.2d 1204 (La.1981); State v. Hatcher, 372 So.2d 1024 (La.1979).
The majority makes a record x breaking jump based on our State v. Gordon, 463 So.2d 665 (La.App. 4th Cir.1985). In Gordon a 7 year old related information to two people about the murder of her mother which occurred two days earlier. Both persons and the 7 year old were permitted to testify as to the child’s knowledge of the incident because
“the original complaint of a young child is admissible when the particular facts and circumstances of the case indicate that it was a product of a shocking episode and not a fabrication.”
Gordon, at p. 669, citing Prestridge, Adams, and Hatcher, supra. Writs were not applied for in Gordon.
In this case the trial court held a hearing and found 8 year old Brandy competent to testify, but found Irma, her 3 year old sister, incompetent. Nevertheless, the trial court permitted the competent 8 year old to relate what her incompetent 3 year old sister said.
I subscribed to Gordon for its limited value under its peculiar facts. In Gordon the 7 year old was competent and did testify as to her personal knowledge. In this case the 3 year old was declared incompetent to testify. Yet her alleged statements were admitted into evidence by a third person.
It would have been more logical for the incompetent 3 yeár old to testify. If she had testified our concern would be as to res gestae, not res gestae and hearsay.
State v. Gordon is inapplicable. I would reverse.

. Hearsay is an out of court statement made by a third party and offered into evidence to prove the truth of the matter asserted. State v. Elzie, 351 So.2d 1174 (La.1977). It is inadmissable into evidence unless it falls under an exception to the hearsay rule. La.R.S. 15:434. One of the exceptions to the rule is the res gestae exception defined in La.R.S. 15:447 as follows:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, throught the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.”

. See: State v. Prestridge, 399 So.2d 564 (La. 1981); State v. Adams, 394 So.2d 1204 (La. 1981); State v. Hatcher, 372 So.2d 1024 (La. 1979); State v. Noble, 342 So.2d 170 (La.1977); State v. Pace, 301 So.2d 323 (La. 1974).