WARD, Judge.
George Sago was convicted of the aggravated rape of a seven year old girl. He appeals his conviction and sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. He contends three trial errors resulted in his conviction by the jury, and argues these errors as a basis for reversal. Finding no merit in his appeal, we affirm his conviction and sentence.
The incident occurred on Saturday, September 17, 1988 while the victim lived with *1357 her mother, and younger sister and brother in Algiers. An adult male cousin, Delbert Williams, and two friends of the victim’s mother, Felton Britton and George Sago, stayed with them on occasion, frequently taking care of the victim and her younger siblings.
On this particular day, the victim’s mother left home to go shopping, and she did not return that afternoon or night. Williams, Britton, and Sago were at the house that day, and in the evening Williams and Britton went upstairs to another apartment in the same apartment complex to see some friends, where they listened to music, drank beer and smoked marijuana, leaving the victim and her younger sister and brother alone with Sago. When Williams and Britton returned, Sago and the children were inside. The victim was in her mother’s bedroom, and the younger children were roaming around the apartment.
The victim’s mother did not return to the apartment that afternoon because she was arrested for shoplifting. But when she was released from jail the next day she returned home and as she was bathing the victim she noticed that the child acted withdrawn and appeared to be in pain. This behavior prompted the mother to take the victim to a doctor. The doctor told the mother the child appeared to have a virus or infection that could have been caused by “a number of things” for which he prescribed an antibiotic. A later examination showed the victim had gonorrhea.
While visiting her grandmother and two older sisters the following weekend, the victim told them she was molested by Sago. The victim also told them she did not tell her mother because Sago threatened to beat her if she told anyone. After the victim’s older sisters told their mother what happened, the mother called the police and Sago was arrested.
Turning now to the first assignment of error, Sago maintains the trial court erred by permitting the victim, now only nine years of age, to testify before the jury. He contends that she was not a competent witness.
Before permitting the testimony to be heard, the trial judge questioned her out of the presence of the jury. After determining she had an appreciation of the difference between telling the truth or a lie, the judge declared her competent to testify.
The substance of the victim’s testimony supports the trial court’s conclusion that she was a competent witness. The victim testified that when she and her younger siblings were alone with Sago that Saturday night, he came into her mother’s bedroom where she lay watching television, pulled her down on the bed, removed her clothes and his, with the exception of his underwear. When asked if the defendant hurt her she responded affirmatively and told the Court that Sago’s “private” went “halfway into [her] private.” When she screamed, Sago left the room. She did not tell her mother of the attack because she was afraid Sago would hurt her.
Every person of proper understanding is competent to be a witness, except as otherwise provided by legislation. La. Code of Evidence Art. 601. The trial court’s determination of competency is to be given great weight. State v. Troy, 439 So.2d 433 (La.1983).
This trial was held subsequent to the effective date of the new Louisiana Code of Evidence and the corresponding repeal of R.S. 15:469 relative to the competency of witnesses under twelve years of age. Nevertheless, the trial judge examined the victim under the provisions of R.S. 15:469 to ascertain whether she had sufficient understanding to testify.
Because the trial judge had the opportunity to observe the demeanor of the witness and because the victim’s testimony as to the facts of the case was credible and consistent with other factual testimony, we find no error in the trial court’s determination of competency. The record fully supports the trial court’s conclusion that the victim was a competent witness, and considering the great discretion given to trial courts in such matters, Sago’s claim of trial court error here is without merit.
By his second assignment, the defendant contends the trial court erred in admitting the testimony of the victim’s old *1358 er sister as to the victim’s hearsay statement under the “res gestae” exception to the hearsay rule. Defendant contends that the victim's failure to inform her mother or anyone of the assault for more than a week disqualifies the statement as not being made at the first reasonable opportunity. State v. Prestridge, 399 So.2d 564 (La.1981).
We do not believe the trial court committed trial error here because the victim made a complaint at the earliest practical opportunity. Sago frequently came and went from the victim’s home and slept there on many occasions. He was, on numerous occasions, left alone with the victim and had threatened the victim with a beating if she told anyone. Although Sago left the victim’s home the Sunday night following the rape, the victim could not be sure he would not return, since he had easy and frequent access to the home. Under the circumstances, even though the victim waited to report the crime until the following weekend at her grandmother’s home, where she apparently felt more secure, this we believe constitutes an “early report.” State v. Bennett, 549 So.2d 398 (La.App. 4 Cir.1989).
Sago’s final assignment argues the insufficiency of the evidence to prove that he penetrated the victim’s vagina during sexual intercourse. He testified and denied harming or attempting to rape the victim. He admitted a conviction for public drunkenness and that he frequently drank and did drugs with the victim’s mother. He claimed that about 10:30 p.m. on Saturday he went next door, brought the children home, fed, bathed and put them to bed. He testified he had no symptoms of gonorrhea and was never tested for it while imprisoned.
He also argues that the medical testimony did not exclude the possibility that the victim’s injury was accidental. Moreover, he argues that because the victim did not know the meaning of “rape” or “hump” and because she testified she never saw his “privates”, her testimony is insufficient to prove penetration occurred.
R.S. 14:41 defining the crime of rape states in part that any penetration, vaginal or anal, however slight is sufficient to complete the crime.
There was other evidence besides the victim’s testimony, which was apparently persuasive. Dr. Helen Britton, a physician who examined the victim, testified that she detected an injury to the victim’s vagina which indicated that “something would have had to have broken the plain of the labia and entered into the vaginal wall to cause the trauma.” This testimony, medical evidence which revealed an intact hymen but penetration sufficient to cause trauma to the vaginal area, corroborates the victim’s strong statements under oath that Sago’s “private” went “halfway into [her] private.”
The evidence was sufficient to meet constitutional due process standards: considering the evidence in the light most favorable to the State a reasonable trier of fact could readily reach the conclusion that each element of the offense charged had been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The conviction and sentence are affirmed.
AFFIRMED.