643 So.2d 1267 (1994)
STATE of Louisiana
v.
Cecil J. TROULLIET.
No. 94-KA-183.
Court of Appeal of Louisiana, Fifth Circuit.
September 14, 1994.
*1268 John M. Mamoulides, Dist. Atty., Fredericka Wicker & Kim McElwee, Asst. Dist. Attys., Dorothty A. Pendergast & James A. Williams, Asst. Dist. Attys., Research & Appeals, Gretna, for plaintiff-appellee.
Louis Korns, of counsel, Office of Dist. Atty., Gretna, Bruce G. Whittaker, Staff Appellate Counsel, Gretna, for defendant-appellant.
Before THOMAS F. DALEY, J. Pro Tem., and GAUDIN and GOTHARD, JJ.
THOMAS F. DALEY, Judge Pro Tem.
The defendant was charged by grand jury indictment with sixteen counts of various sexual offenses consisting of two counts of aggravated rape, LSA-R.S. 14:42; two counts of aggravated crime against nature, LSA-R.S. 14:89.1; four counts of molestation of a juvenile, LSA-R.S. 14:81.2; two counts of aggravated oral sexual battery, LSA-R.S. 14:43.4; and, two counts of sexual battery, LSA-R.S. 14:43.1. Prior to the commencement of trial, the state nolle prossed counts five through sixteen of the indictment and the defendant was tried only on the first four counts, counts one and two charging aggravated rape and counts three and four charging aggravated crime against nature. At the conclusion of the four day trial on June 23, 1993, the jury returned a verdict of guilty as charged on all four counts. Subsequently, the trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence on counts one and two, and to fifteen years at hard labor without benefit of probation, parole or suspension of sentence on counts three and four. The trial court further ordered that the sentences be served consecutively with each other.

FACTS
In May of 1992, Jessica, the defendant's step-daughter, who was six years old at the time, was admitted into Tulane Medical Center for acting out behavior including hypersexuality. After Jessica admitted that the defendant had sexually abused her, the doctors informed her mother, Therisa Troulliet, that they believed that Jessica had been sexually abused and sexually active. At first, Mrs. Troulliet refused to believe the allegations; however, she was encouraged by the Tulane Staff to report the abuse to authorities.
*1269 While Jessica was still in the hospital, Mrs. Troulliet confronted her other children, Anlea, the defendant's nine-year old daughter, and Joseph, the defendant's eight-year old step-son, about possible abuse. After she informed them that Jessica had been sexually abused, they stated that the defendant had sexually molested each of them along with Sue Ellen, Mrs. Troulliet's ten-year old sister. Sue Ellen later admitted to Mrs. Troulliet that the defendant had forced her to engage in sexual intercourse with him, and Mrs. Troulliet called the child protection authorities to report the abuse.
During the subsequent investigation regarding Anlea and Sue Ellen, it was discovered that the defendant had engaged in sexual intercourse with them and had forced them to perform oral sex on him. These acts occurred over a two and one-half year period, beginning in January of 1990, when the defendant was at home alone with the children.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant contends that the trial court erred when it permitted the prosecutor to introduce testimony regarding the defendant's refusal to waive his right to remain silent following his arrest. The defendant asserts that such testimony constituted an improper reference to the exercise of his constitutional privilege against self-incrimination.
The issue arose during the testimony of Detective Stewart Dunklin of the Jefferson Parish Sheriff's Office when, over the objection of defense counsel, Detective Dunklin was permitted to testify before the jury that after arresting the defendant, he advised him of his Miranda rights, gave him a copy of a standard Rights of Arrestee form, and allowed him to read it. The detective then testified that the defendant, after being read his rights from the form, refused to sign waiving his rights. The prosecutor did not pursue this line of questioning and moved on to an unrelated topic.
The United States Supreme Court has held that, because an accused's post-arrest silence is "insolubly ambiguous" and a jury is apt to draw inappropriate inferences from the fact that a defendant chose to remain silent, "the use for impeachment purposes of petitioner's silence at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." Doyle v. Ohio, 426 U.S. 610, 617 and 619, 96 S.Ct. 2240, 2244 and 2245, 49 L.Ed.2d 91 (1976). However, a brief reference to post-Miranda silence does not mandate a mistrial or reversal where the trial as a whole was fairly conducted, the proof of guilt is strong, and the state made no use of the silence for impeachment. State v. Mays, 612 So.2d 1040 (La.App.2d Cir. 1993), writ denied, 619 So.2d 576 (La.1993); See also State v. Smith, 336 So.2d 867 (La. 1976).
In State v. Mosley, 390 So.2d 1302 (La. 1980), the Louisiana Supreme Court addressed a factual scenario similar to that presented in this case. In Mosley, the defendant contended that the trial court erred in allowing the prosecutor to ask two police officers testifying for the state if the defendant had been advised of his constitutional rights at the time of his arrest. The Supreme Court disapproved of the prosecutor's conduct but found that "oblique and obscure reference to the defendant's post-arrest silence" did not constitute reversible error considering that the prosecutorial examination did not stress the right to remain silent or attempt to elicit testimony regarding defendant's failure to respond to police questioning.
In the instant case the prosecutor did not pose a question specifically regarding the defendant's post-arrest silence but instead inquired about the defendant's arrest and advise of rights. Thus, as in Mosley, the examination did not stress or emphasize the defendant's exercise of his right to remain silent. Moreover, the trial as a whole was conducted fairly, there was overwhelming evidence of the defendant's guilt, and the state made no use of the silence for impeachment purposes. As such, any error was harmless beyond a reasonable doubt. Therefore, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant contends that the trial court erred in declaring Jessica incompetent *1270 to testify, thereby allegedly excluding a significant defense witness.
Jessica was one of the alleged victims in the original multi-count indictment. All counts alleging criminal conduct with Jessica were nolle prossed prior to trial by the state. Jessica at the time of trial was seven years old and was receiving psychiatric treatment on a weekly basis.
The law regarding the competency of a witness is quite clear. Every person of proper understanding is competent to be a witness except as otherwise provided by legislation. LSA-C.E. art. 601. Understanding, and not age, is the test of whether any person shall be sworn as a witness. LSA-C.E. art. 601; State v. Francis, 337 So.2d 487 (La.1976). A key determination to be made is whether the witness is able to understand the difference between truth and falsehoods. State v. Doss, 522 So.2d 1274 (La.App. 5th Cir.1988), writ denied, 530 So.2d 563 (La. 1988). The determination by the trial court that a child is competent to testify as a witness is based not only upon the child's answers to questions testing his or her understanding, but also upon the child's overall demeanor on the witness stand. State v. Bennett, 591 So.2d 1193 (La.App. 1st Cir. 1991), writ denied, 594 So.2d 1315 (La.1992).
A trial court's determination on the competency of a child about to be used as a witness is entitled to great weight on appeal because that court has the crucial advantage of seeing and hearing the child. State v. Foy, 439 So.2d 433 (La.1983); State v. Isacc, 544 So.2d 531 (La.App. 5th Cir.1989). Therefore, the trial court is vested with wide discretion in determining competency of child witnesses; on appeal, its ruling will not be disturbed in absence of manifest error. State v. Foy, supra; State v. Bennett, supra; State v. Isacc, supra.
The trial court conducted a hearing to determine the competency of Jessica. When examined she stated her age (seven years) and the grade and school she attended (fourth grade at Jean Lafitte Elementary). She answered that she knew the difference between telling the truth and telling a lie and stated that she never told a lie. She did not respond when asked what would happen to her if she told a lie. When asked if she knew that it was bad to tell a lie, she responded "yes." She further answered that she could tell the truth during questioning in the courtroom.
Prior to the examination of Jessica, Dr. Dawson, an expert in child psychiatry, was called to testify for the "limited purpose of explaining Jessica's ... current psychiatric status to assist the Court in determining whether Jessica is competent to testify." She stated that she had been treating Jessica for one year and had diagnosed Jessica with attention hyper-activity disorder, anxiety disorder and oppositional defiant disorder. According to Dr. Dawson, Jessica had trouble understanding the difference between a truth and a lie. In particular, Jessica would have trouble "under the pressure of being in a courtroom distinguishing between the two, and she may not be able to give an accurate history under stress." Dr. Dawson further stated that she felt that under the arrangement made for the children to testify out of the presence of the jury, Jessica would have trouble distinguishing between fact and fantasy and would be incompetent to testify.
During the trial, Dr. Dalton, an expert in child psychiatry, testified about the circumstances surrounding Jessica's initial allegations of sexual abuse. He stated that Jessica was admitted to Tulane Medical Center for psychiatric treatment on May 20, 1992 for acting out and inappropriate behavior. She remained hospitalized for 30 days. Based on the history taken from Jessica's mother, Jessica's behavior was uncontrollable at that time and she was prone to tell lies.
The trial court found that Jessica was incompetent to testify based upon her answers, her demeanor and the testimony of Drs. Dawson and Dalton.[1]
*1271 After reviewing the record, we can find no abuse of the trial court's wide discretion in ruling that Jessica was incompetent. Jessica's responses relative to her understanding of the need to tell the truth were vague and the trial court had the opportunity to observe her demeanor, a factor of great importance in determining her understanding. As such this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
The defendant has requested we review the record for errors patent.
A review of the record reveals that the commitment and sentencing transcript fail to reflect that the trial court gave the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence; however, such an allowance is mandatory. LSA-C.Cr.P. art. 880; State v. Sherman, 532 So.2d 908 (La.App. 5th Cir.1988).
Accordingly, the conviction of defendant is affirmed; however, the sentence is amended to give the defendant credit for time served.
CONVICTION AFFIRMED, SENTENCE AMENDED AND AS AMENDED AFFIRMED.
NOTES
[1] We find no error in the trial court's reliance on the expert testimony of the doctors in determining the competency of Jessica. See State v. Gordon, 463 So.2d 665 (La.App. 4th Cir.1985), where the evaluation by a clinical psychologist was admitted into evidence during a competency hearing.