laMcMANUS, Judge.
In this matter, we affirm the trial court’s denial of the appellant’s motion for a mistrial.
STATEMENT OF THE CASE
On October 5, 1999, the defendant, Phillip Helton, was charged by bill of information with possession of cocaine with intent to distribute in violation of LSA-R.S. 40:967(A). The defendant was arraigned on November 15, 1999, and he entered a plea of not guilty. The defendant filed several pre-trial motions, including a motion to suppress the evidence, on February 1, 2001. On April 4, 2001, the trial court heard and denied the defendant’s motion to suppress the evidence.
On May 3, 2001, a one-day jury trial was held, and the jury found the defendant guilty of possession of cocaine. On August 1, 2001, the trial court sentenced the defendant to five years of imprisonment at hard labor. The State filed a multiple offender bill of information on May 17, 2001, alleging that the defendant was a second felony offender. The defendant had previously pled guilty and was sentenced to two counts of simple burglary |j»,on February 9, 1998 in case No. 98-0258 in Division “P” of the Twenty-Fourth Judicial District Court.
After the multiple offender hearing on August 15, 2001, the trial court found the defendant to be a multiple offender. The trial court vacated the previous sentence and sentenced the defendant as a multiple offender to nine years of imprisonment at hard labor without the benefit of probation or suspension of sentence. The trial court oi-dered that the first eight years of the sentence be served concurrently with the sentence imposed in case No. 98-0258 and that one year be served consecutively with No. 98-0258. On December 17, 2001, the defendant filed an appeal, which was granted by the trial court on January 3, 2002.
FACTS
Detective Heather Gorman of the Jefferson Parish Sheriffs Office (JPSO) testified at the trial. She stated that on October 5, 1999 she was working with Deputy Bryan Huesman in the area of Ames Boulevard and Fields Street in Marrero. According to Gorman, Huesman was driving an un *731 marked police unit on Fields Street around 2:00 p.m. Gorman testified that, as they turned onto Fields Street, she observed an albino male leaning into a black Camaro. The Camaro was sitting in the middle of the street.
Huesman stopped the unit a few feet behind the Camaro. According to Gor-man, both officers exited the vehicle. Gor-man approached the passenger side of the Camaro, while Huesman approached the driver’s side. Gorman stated that there were two individuals in the vehicle, along with the albino leaning into the car. The Camaro had tinted windows and she admitted that she could not see into the car through the back. However, she testified that, as she approached the vehicle and got closer to the passenger door, she could see into the vehicle because the windows were down. | PiGorman testified that she observed the passenger of the vehicle, later identified as Garland Guillory, holding a bag of small rocks. Gorman believed the bag of rocks to be narcotics. She stated that she immediately informed Huesman by stating “967” — a code name for narcotics.
Gorman then stated that the driver of the Camaro, later identified as the defendant, put the car in drive and started driving away. Gorman also stated that she and Huesman were dressed in street crimes uniforms. Gorman testified that they yelled to the driver, “Police, stop!” When the car continued to drive away, Huesman jumped into the police unit and went after the Camaro. Huesman stopped the car a half a block away. According to Gorman, the defendant did not speed off.
The albino male started walking toward a nearby bar. Gorman stopped the albino male, patted him down for safety and then handcuffed him. The albino male was identified as Benjamin Bagget. Gorman relocated Bagget down the street where Huesman had stopped the Camaro.
Gorman testified that $135 was recovered from the defendant. She stated that, while she watched the three suspects, Huesman retrieved the bag of rocks from the Camaro. According to Gorman, Hues-man field tested the rocks, which tested positive for cocaine.
Deputy Bryan Huesman also testified at trial. Huesman reiterated the testimony of Gorman. Huesman also stated that, as he approached the driver’s side of the Ca-maro, he observed the albino male leaning into the car and giving the defendant money. According to Huesman, when the defendant proceeded to drive away, he ran back to his unit, jumped in, and pursued after the Camaro. Huesman testified that he was able to pass the Camaro and cut off his escape. He exited his police unit, went to the front of the Camaro, and ordered them out of the car.
| ¿Huesman testified that he handcuffed both the defendant and Guillory. He also testified that he recovered $135 from the defendant’s hand. Huesman observed the bag of rocks on the passenger side of the vehicle. He stated that the bag contained white substances that were consistent with crack cocaine. Huesman field tested the substance and stated that it tested positive for cocaine.
Thomas Angelica of the JPSO Crime lab testified as an expert in forensic chemistry. He testified that the 16 pieces of off-white material found in the bag contained cocaine.
The defendant testified at trial that the police stopped him on Fields Street. The defendant claimed that he went over to a friend’s house in the area to get the air conditioner on his car fixed. He stated that the air conditioner had already been repaired when the police stopped him. *732 According to the defendant, when he saw the blue lights of the police car, he immediately stopped his vehicle. The defendant refuted Huesman’s testimony and claimed that the police car never passed him and cut him off. The defendant stated that when he was stopped, he exited his vehicle and presented his registration and license to the officer.
The defendant testified that the police officer threw him onto the hood of his vehicle and handcuffed him. The defendant also claimed that the police took $135 from his pocket and not his hand. The defendant stated that he knew nothing about the bag of rocks. He admitted that he pled guilty to burglary of an automobile.
On cross-examination, the defendant admitted that he had no documentation with him regarding the air conditioner repair. The defendant stated that he did not talk to Bagget at all. He claimed that Bagget was talking to Guillory.
^ASSIGNMENT OF ERROR NUMBER ONE
The defendant argues that the trial court erred in denying his motion for mistrial because during direct examination of Detective Gorman the State made direct references to the defendant’s post-arrest silence. The defendant contends that the State’s line of questioning regarding his post-arrest silence was intended to impeach the defendant’s credibility.
The State points out that the trial court sustained the defendant’s objection and denied the motion for mistrial. The State contends that, since the trial court admonished the jury and precluded the State from asking any further questions regarding the defendant’s silence, the brief reference of the defendant’s silence was harmless error. The State argues that any error in the questioning did not contribute to the verdict because of the strong evidence of guilt presented to the jury.
During the State’s direct examination of Detective Gorman, the following dialogue took place between the assistant district attorney and the officer regarding what happened after he and Huesman stopped the defendant:
Q. When all this was taking place, did anyone approach you at all?
A. No, sir.
Q. Ask any questions?
A. No, sir.
Q. Did the defendant offer any explanation whatsoever about what was going on that day?
A. No, sir.
Q. Did he offer you any explanation about why—
Mr. Regan:
Judge, I would object.
IfiThe trial judge sustained the objection.
LSA-C.Cr.P. art. 770 provides in pertinent part that a mistrial shall be granted:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the re *733 mark or comment but shall not declare a mistrial.
LSA-C.Cr.P. art. 771 provides:
The court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
The defendant objected timely and moved for a mistrial. After a bench conference, the trial court sustained the objection and ruled:
The motion for mistrial however, is denied.
However, the State may ask no questions with regard to the mention that the Defendant didn’t offer an explanation, or didn’t say anything. And while I don’t believe that it isn’t part of Defendant’s Trial at this juncture for a reversible error; at this juncture, the |7question is clearly error. I believe if nothing further is made of it and nothing is stated in Closing Argument, that it is harmless error.
However, there’s to be absolutely no further questioning or comment upon the fact that the Defendant offered no explanation. It is clearly a line of questioning in -violation of the Fifth Amendment.
The trial court then asked the defense counsel if he wanted an instruction to the jury. The defense counsel asked the trial judge to instruct the jury to disregard the last two questions and the answer. The trial judge stated to the jury:
The objection is sustained.
Ladies and gentlemen, with regard to the two questions that were just asked of the witness; the question and the answer to the first question are stricken from the record. You may give no consideration whatsoever to the fact that the Defendant said nothing or made any explanation whatsoever to the Officer. Any consideration you would give to the question or the previous answer, would be a violation of the Defendant’s Fift[h] Amendment privilege. At no time need any individual say anything to any Police Officer, except to give a name and perhaps other identifying information.
A brief reference to a defendant’s post-arrest silence does not mandate either a mistrial or a reversal where the trial as a whole was fairly conducted, where the proof of guilt was strong, and where the prosecution made no use of the silence for impeachment purposes. State v. Campbell, 97-369 (La.App. 5 Cir. 11/25/97), 703 So.2d 1358; State v. Troulliet, 643 So.2d 1267 (La.App. 5 Cir.1994).
We find that the trial court in this case did not err in denying the defendant’s motion for mistrial. The State’s line of questioning elicited a brief mention to the defendant’s post-arrest silence. The defense counsel timely objected and the trial court sustained the objection. The trial court also admonished the jury to disregard the two questions and one answer by *734 Officer Gorman. The State did not use the post-arrest silence for |simpeachment purposes and the trial was fairly conducted. Therefore, the trial court did not err in denying the defendant’s motion for a mistrial.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We find no errors patent which require action by this court.
For the above reasons, we affirm the trial court’s denial of the motion for mistrial.
AFFIRMED.