STEPHEN J. WINDHORST, Judge.
| .¿Defendant, Wayne Chester, was convicted of simple kidnapping in violation of La. R.S. 14:45, and was sentenced to imprisonment at hard labor for five years. Subsequently, defendant stipulated to being a third felony offender.[1] Defendant’s original sentence was vacated, and he was sentenced to imprisonment at hard labor for seven years, without benefit of probation, or suspension of sentence. For the reasons that follow, we affirm defendant’s conviction and sentence and remand for correction of the commitment.
The victim, Melody Osin, testified that on October 14, 2011, defendant kidnapped her.[2] Defendant was her ex-boyfriend and the father of her five-year old son, W.O. Ms. Osin was visiting a friend with W.O., and while outside the friend’s'residence, she noticed defendant’s van and she ran inside her friend’s phouse.[3] Defendant entered the house and pulled Ms. Osin outside by her hair. She was forced into the passenger side of the vehicle and W.O. entered the backseat. She dialed 9-1-1 on her cell phone so the operator could hear what was occurring in the vehicle.
Defendant drove, to the home of W.O.’s babysitter, where he confronted the babysitter about Ms. Osin not properly caring for W.O. Defendant left the babysitter’s residence with both Ms. Osin and W.O. in *1008 the vehicle, drove down Airline Highway, and stopped at a traffic light. Ms. Osin noticed the car was unlocked and jumped out of the vehicle, leaving W.O. in the vehicle. She knocked on the car window of three females and requested that they take her to the nearest police station. The women brought Ms. Osin to the Kenner police station, where an officer instructed her that she must report the incident to the Jefferson Parish Sheriffs Office the incident occurred. She made a statement of the incident in the parking lot of a Popeye’s Louisiana Kitchen with the Jefferson Parish Sheriffs Office.
Deputy Abraham Andino, an employee with the Jefferson Parish Sheriffs Office, testified that he was dispatched to a call for service at “Airline and Grove,” at the parking lot of Popeye’s Louisiana Kitchen, to meet with Ms. Osin. He testified Ms. Osin relayed to him that “her exboyfriend had pushed her into a car and wouldn’t let her get out that vehicle,” and that he took a voluntary statement from Ms. Osin regarding the incident. Deputy Andino testified Ms. Osin also advised him that defendant had “slapped her around a couple of times in the face area.” Deputy Andino took a photograph of her face. He testified that “Ms. Osin further informed him that she was able to get out of the vehicle, jump into another 14vehicle and ask that person to bring them to a Police Station.” Deputy Andino testified that after speaking with Ms. Osin, she advised him that W.O. was back at the babysitter’s house.[4] Deputy Andino and Ms. Osin drove to the babysitter’s house to ensure W.O. was safe.
Detective Donald Zanotelli of Jefferson Parish Sheriffs Office Homicide Division testified he was assigned to the Personal Violence Unit on the day of the kidnapping, and he handled the follow-up investigation involving defendant and the kidnapping of Ms. Osin. Detective Zanotelli testified Ms. Osin informed him of the circumstances of the kidnapping, and as a result he obtained an arrest warrant for defendant for the crimes of domestic abuse battery and kidnapping. He further testified to receiving a call from another deputy, who advised him of a second incident that had occurred involving defendant and Ms. Osin, on October 17, 2011.[5] Defendant was subsequently arrested.
W.O. was seven years old when he testified. He was first qualified as a witness after questioning by both the State and defense counsel. W.O. testified that he was near his mom and defendant came up the street and struck his mom. W.O. said he was crying and calling to Ms. Osin and •then she jumped out of the car. W.O. said he felt sad when Ms. Osin jumped out of the car because he thought his “Momma probably going to get hurt.” W.O. said he told the truth and no one told him what to say on the stand.
| ^Defendant denied kidnapping Ms. Osin. He testified he was supposed to meet Ms. Osin on the day of the kidnapping to re *1009 trieve the proper paperwork to enroll W.O. in school. Defendant did not recall forcing Ms. Osin into the vehicle or kidnapping her.
Discussion
■ [1] In his sole assignment of error, defendant contends that the trial court abused its discretion in allowing W.O. to testify without additional qualification. Defendant claims that W.O. was not competent and he did not give consistent answers during his qualification. Defendant further contends that W.O.’s testimony was the only evidence offered by the State to bolster Ms. Osin’s version of the events, thus, the trial court’s error in permitting this testimony was reversible error.
Every person of proper understanding is competent to be a witness except as otherwise provided by legislation. La. C.E. art. 601. “Understanding, not age, is the test of competency for any witness.” State v. Foy, 439 So.2d 433, 435 (La.1983); State v. Pierce, 11-320 (La.App. 5 Cir. 12/29/11), 80 So.3d 1267, 1278; State v. Troulliet, 94-183 (La.App. 5 Cir. 9/14/94), 643 So.2d 1267, 1270. A vital determination to be ascertained is whether the witness understands the difference between the truth and falsehoods. State v. Cedrington, 98-253 (La.App. 5 Cir. 12/16/98), 725 So.2d 565, 577, writs denied, State v. Johnson, 99-0190 (La.6/4/99), 743 So.2d 1249; State v. Codrington, 99-0431 (La.6/25/99), 745 So.2d 1182. The competency of a child to testify as a witness is based not only on the child’s answers to questions testing his understanding, but also in the child’s overall demeanor. State v. Pierce, 80 So.3d at 1278. A “child’s sometimes hesitant or unresponsive answers do not necessarily indicate incompetency.” State v. Humphrey, 412 So.2d 507, 516 (La.1982). Those answers may be part of an | (¡overall demeanor in the unfamiliar courtroom experience which favorably reflects testimony only as to what is clear to the child. Id.
The trial court is vested with wide discretion in determining the competency of child witnesses. State v. Cedrington, 725 So.2d at 577; See also, Troulliet, supra. The trial court has the crucial advantage of seeing and hearing the child and thus, on appeal, its determination is entitled to great weight and its ruling will not be disturbed in absence of manifest abuse of discretion. Foy, 439 So.2d at 435; Cedrington, supra.
On the day of trial, the State moved to call W.O. to the stand. The defense objected and challenged the competence of W.O. The trial court conducted a competency hearing wherein the State and defense counsel extensively questioned W.O. to determine W.O.’s competency. After a thorough examination, the trial court found W.O. competent to testify.
W.O. was able to articulate his full name, age, school, and grade level. He stated he knew the difference between the truth and a lie, which was confirmed by one example. He promised he would tell the truth in front of the jury. W.O. further said that no one had told him what to say when answering questions that day and no one told him not to tell the truth. Although W.O. was unresponsive at times, this does not necessarily indicate incompetency. During W.O.’s testimony, he was coherent and responsive to the questions asked. Accordingly, we find that the trial court did not abuse its discretion in finding W.O. competent to testify.
We note also that even if W.O. had not testified, the jury could reasonably conclude from Ms. Osin’s testimony that all of the elements of the charge of simple kidnapping had been proven beyond a reasonable doubt. Ms. Osin’s testimony was corroborated by the 9-1-1 recordings, including a call made during |7the kidnap *1010 ping, and evidence of defendant’s history of threats and violence against Ms. Osin.
Errors Patent
The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 387 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals one error patent requiring corrective action.
The Louisiana Uniform Commitment Order provides that the date of the offense was October 18, 2011. The record reveals that the date of the offense was October 14, 2011. Therefore, we remand this case for correction of the Louisiana Uniform Commitment Order error regarding the date of the offense. See State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, 41. We direct the Clerk of Court to transmit the original of the Louisiana Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and the Department of Correction’s Legal Department. See La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam). We further order that, in addition to the record copy, a separate copy of this opinion be delivered to the Clerk of Court of the Twenty-Fourth Judicial District Court for the Parish of Jefferson.
Conclusion
For the reasons stated above, we affirm defendant’s conviction and sentence and remand for correction of the commitment.

CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. Defendant previously pled guilty as charged to violating La. R.S. 14:31, manslaughter, on March 12, 1996, and pled guilty as charged to violating La. R.S. 40:967(A), distribution of schedule II narcotics, on April 21, 2009.

. At the time of the kidnapping, defendant was on parole until 2017 for manslaughter, possession of schedule II narcotics, and domestic abuse battery.

.Ms. Osin testified she ran inside her friend’s house because she was tired of defendant hitting her. The State’s 404(B) Motion was granted allowing evidence in at trial of a previous domestic abuse battery against Ms. Osin by defendant.

. After Ms. Osin escaped the vehicle and was safely in Kenner, she called the babysitter to ask her where W.O. was located. The babysitter informed Ms. Osin that she safely had care of W.O.

. Ms. Osin reported a second incident, i.e., stalking, to the police on October 17, 2011, after she dropped W.O. off at school. Ms. Osin claimed that defendant began following her in his vehicle, bumped her vehicle with his, and subsequently engaged in a car chase with her. Ms. Osin stated she had dialed 9-1-1 and her cell phone remained connected to the police for the duration of the chase. The Jefferson Parish Sheriff’s Office arrived on the scene and obtained a statement from Ms. Osin. Defendant testified that he did not know anything about chasing Ms. Osin, bumping cars with her, or engaging in a high speed chase with her.