**STATE of Minnesota, Appellant,**

v.

**Michael CAIN, Respondent.**

**No. C4-88-665.**

Court of Appeals of Minnesota.

July 26, 1988.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for appellant.

Alan D. Margoles, St. Paul, for respondent.

Heard, considered and decided by HUSPENI, P.J., and NORTON and THOREEN *, JJ.

## OPINION

JOHN F. THOREEN, Judge.

This appeal is from a pretrial order for psychological examination of two of the children of respondent Michael Cain. The children are the alleged victims of sexual abuse by Cain. The examination is to be conducted by respondent's expert witness. We affirm and remand for restrictions on the examination.

## FACTS

Respondent Michael Cain is charged with four counts of second degree criminal sexual conduct against his daughters, C.C., age 6, and V.C., age 4. The acts of sexual contact are alleged to have occurred between July 1 and October 31 of 1987.

The children, who were involved in two earlier reports of sexual abuse in 1983 and 1985, reported abuse by their father in a therapy session on October 21, 1987, with their brother's therapist, Dr. John Moede. The girls saw a therapist, Dr. Jeanne Herzog, on October 26, 1987, and were referred to Dr. Carolyn Levitt for an examination, which took place November 18, 1987. At each of these sessions they made

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

statements detailing sexual abuse by their father and a Darrell Revord, an employee of Cain's who was staying at his house.

Cain's wife, Hazel Cain, lives with the children next door to Cain in the other half of their duplex. According to the family court file they were separated in July 1987, with Cain enjoying visitation until the sexual abuse charges surfaced in October 1987. The complaint was filed on January 6, 1988, and a "no contact" order was issued on January 11 prohibiting any contact with the children.

Cain sought a court order for an independent psychological examination to be conducted by Dr. Ralph Underwager. A hearing was held on the motion at which Dr. Underwager testified, as well as the children's family court guardian ad litem.

The guardian ad litem, Elizabeth Hurley, testified she believed an independent psychological examination would not harm the children. She was a volunteer guardian, working on her second case. She had interviewed the children and watched them interact with each of the parents. She had talked with Dr. Underwager and his colleague, Dr. Hollida Wakefield, and had read their book, *Accusations of Child Sexual Abuse.* She has no training in psychology and does not know how extensive an examination would be.

Dr. Underwager expressed disagreement with the evaluation methods of Drs. Herzog and Levitt. He criticized their evaluations as assuming from an early stage that sexual abuse had occurred. He testified that an interviewer can exert a strong influence on children, giving positive reinforcement to statements of sexual abuse and negative reinforcement through the removal of the "noxious stimulus" of repeated questions on that subject. Dr. Underwager advocated a technique of "free recall," allowing children to produce statements with minimum adult social pressure.

Dr. Underwager identified several "indicators," present in this case, showing the need for an independent psychological examination: 1) no physical evidence of abuse; 2) no fear of the alleged perpetrator; 3) allegations surfacing in the midst of a bitter custody battle; and 4) recantations by the children. He also cited indications from the previous sexual abuse reports that the mother, Hazel Cain, is obsessed with the possibility of sexual abuse. Dr. Underwager also cited, from the videotaped interviews by Drs. Herzog and Levitt and from their reports, "very overt and repeated indication of adult social influence." He testified Dr. Levitt used leading questions and repeated questioning to elicit statements of sexual abuse. He also testified the girls' continuing therapy with Dr. Herzog was reinforcing a belief that abuse occurred and could destroy any memory the children had of the real event.

Dr. Underwager testified an independent examination could help sort out learned and suggested memory from real memory. He stated such an examination would require three separate interviews for each child, a one-on-one interview and an interactive interview with each parent. He estimated the total interview time at four to five hours.

Dr. Underwager testified children up to the age of 10 are generally not competent to testify because they cannot think abstractly, and therefore cannot deal with the concept of truth. He also testified there was no evidence of harm from interactive interviews involving the parents.

The file includes some information concerning previous charges of sexual abuse of the children, a 1985 charge of sexual abuse by a babysitter, and possible abuse by Cain's brother-in-law in 1983. A summary of the investigation states:

Dr. Levitt felt [C.C.] had a "strong imagination" and was not able to confirm the Cains suspicions of sexual abuse. During the current investigation * * *, we had the feeling that the Cains are overly concerned about possible sexual abuse. Mrs. Cain questions her children weekly about, "has anyone touched you?" If their behavior is at all questionable, she suspects sexual abuse. Mr. Cain made a statement to us on 1–7–86, that [V.C.] has even accused him of touching her.

The state opposed the motion, without presenting testimony. A psychological evaluation, by Dr. Herzog, showed C.C. to have very superior intelligence, and to be verbally fluent despite brief absence seizures. The evaluation indicated V.C. has above average intelligence.

The court granted the request for an independent examination without findings or restrictions on the scope of the examination. A motion to discontinue the children's therapy with Dr. Herzog was denied.

### ISSUES

1. Did the trial court abuse its discretion in ordering the examinations?

2. Must the state show allowing the examinations will have a "critical impact" on the trial?

### ANALYSIS

#### I.

The state contends it was an abuse of discretion to order an adverse psychological examination. *Cf. State v. Holmes*, 374 N.W.2d 457, 460 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 26, 1985) (no abuse of discretion in denying adverse psychological evaluation of victim); *State v. Sullivan*, 360 N.W.2d 418, 423 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. Apr. 12, 1985) (decision to order examination to determine child's competency was within trial court's discretion). Cain argues the examination would not harm the children, and would provide information helpful to a determination of competency and to the factfinder's assessment of the weight and credibility of their statements.

Cain contends parts of the state's brief, concerning the adverse nature and possible harm from the examinations, should be stricken. However, these statements can be considered as argument, rather than factual assertion. Case law supports a concern about possible harassment of, or harm to, victims through adverse examinations. *See, e.g., Holmes*, 374 N.W.2d at 459 (gynecological exam of child sexual abuse victim).

This court has reversed an order allowing the deposition of a witness in a criminal prosecution. *City of Bemidji v. Harr*, 368 N.W.2d 359, 360 (Minn.Ct.App.1985). We have reversed an order allowing an adverse physical examination of a child sexual abuse victim. *State v. Garrett*, 384 N.W. 2d 617, 619 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 29, 1986). No error was found in *denying* a psychological examination. *Sullivan*, 360 N.W.2d at 423; *see also Potter v. State*, 410 N.W.2d 364, 369 (Minn.Ct.App.1987) (denying post-conviction psychological examination). We have found no authority stating it is beyond the trial court's discretion to order an adverse psychological examination. Courts in other jurisdictions have allowed such an examination upon a showing of "compelling reasons" or upon a "substantial showing of need." *State v. Buckley*, 325 N.W.2d 169, 171 (N.D.1982); *State v. Logue*, 372 N.W. 2d 151, 155 (S.D.1985).

■ We conclude the trial court did not abuse its discretion in ordering the examination. The facts that may justify an adverse psychological evaluation in this case are the prior allegations of abuse, viewed with suspicion by child welfare workers, and the mother's perceived "obsession" with sexual abuse. Parental influence is suggested in the reports, but it may be difficult for a defense expert to probe such influence based on the reports alone.

■ We do not attempt to formulate a standard for allowing adverse psychological examinations of child sexual abuse victims. Some of the reasons advanced in this case, however, must be rejected as insufficient. The fact the children have at times recanted is not sufficient grounds for an examination, since it is a frequent characteristic of child abuse victims. *See State v. Myers*, 359 N.W.2d 604, 601 (Minn.1984). Similarly, a lack of fear of the perpetrator, especially the child's own parent, is not uncommon. *See id.* (child confused by caretaker or parental abuse, unsure of the criminality of the conduct). Also, a child may allege abuse during a custody dispute because this is the first period of separa-

tion from the abuser. *See State v. Garden*, 404 N.W.2d 912, 914 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. June 25, 1987). Finally, allegedly suggestive interviewing methods do not by themselves justify an adverse examination. *Cf. State v. Carver*, 380 N.W.2d 821, 826 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Mar. 27, 1986) (children's hearsay statements to doctor not sufficiently reliable where children were interviewed together and asked leading questions).

We note that, although Cain attempts to characterize the requested examination as a competency examination, he does not challenge the intelligence testing showing the children as very intelligent. The tests, along with the interview reports, would seem to indicate the oldest child at least would be competent to testify. Moreover, Dr. Underwager's testimony inferring children under the age of 10 are generally not competent because they cannot deal with the abstract concept of truth, is contrary to the statute. *See* Minn.Stat. § 595.02, subd. 1(f) (1986) (child under 10 is competent unless the court finds otherwise).

Dr. Underwager in his testimony expressed strong disagreement with the interviewing techniques of the state's experts, Drs. Herzog and Levitt. His view is the children's allegations were made under adult influence, reinforced by interviewing techniques and by continuing therapy. *See State v. Lau*, 409 N.W.2d 275, 276–77 (Minn.Ct.App.1987) (Dr. Underwager testified five-year-old was unable to relate truthfully what occurred due to inability to understand abstract concepts, use of leading questions and other poor interviewing techniques, and prior learning about sexual abuse). Despite his concern about suggestive and reinforcing methods by the state's experts, Dr. Underwager proposed to interview the children only by a nonintrusive, "free recall" method of evaluation. It is unclear how such an examination could "produce a maximum reliable statement," on whether abuse occurred, as the defense proposes, without an attempt to remove the suggestions and reinforcements previously implanted, according to Dr. Underwager.

■ The trial court has the authority to regulate discovery in a criminal case by restrictions of time, place, and manner. Minn.R.Crim.P. 9.03, subd. 3. The trial court here abused its discretion in imposing *no* restrictions on a matter as delicate as adverse psychological examination of child sexual abuse victims, given this strong disagreement over methodology. The order would in effect allow the defense expert to depose the children, challenging their reports of abuse and the influence of their therapist. *Cf. Harr*, 368 N.W.2d at 360 (criminal rules do not allow deposition of witness in criminal case except for unavailability). We remand to the trial court for a protective order limiting the time allowed for the examinations and imposing other appropriate restrictions.

The examiner should be limited to a nonintrusive examination which does not approach the scope of a deposition. The examiner should not be permitted to attack the interviewing techniques of the state's experts through the children. In light of the previous no-contact order, the court should specifically review whether the interactive interview involving Cain should be allowed.

## II.

■ Cain argues this appeal should be dismissed because the state has not shown the order allowing the adverse examinations will have a critical impact on the outcome of trial. *See State v. Joon Kyu Kim*, 398 N.W.2d 544, 550–51 (Minn.1987). The supreme court has discussed the "critical impact" standard as one applying to appeals from orders suppressing evidence. *See id.; State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). The "critical impact" standard replaces the burden of proof formerly required by statute for prosecution appeals from pretrial *suppression* orders. *See Webber*, 262 N.W.2d at 159 (citing repealed section 632.12). Under the former statute, a discovery order was not among the pretrial orders listed as appealable. Minn.Stat. § 632.11 (1974) (repealed). The rules now make all pretrial orders, except dismissals for lack of probable cause, ap-

pealable by the state. Minn.R.Crim.P. 28.-04, subd. 1(1). Thus, we find no indication the "critical impact" standard was meant to apply to discovery orders. *See Harr*, 368 N.W.2d at 360 ("critical impact" standard does not apply to prosecution appeal of discovery order).

## DECISION

The trial court did not abuse its discretion in ordering adverse psychological examinations. Failure to place any restrictions on the examinations was an abuse of discretion, and the case is remanded for a protective order.

Affirmed and remanded.