STATE of Minnesota, Respondent,

v.

Raymond Edward MOORE, Appellant.

No. C8–88–345.

Court of Appeals of Minnesota.

Dec. 20, 1988.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted Co. Atty., Rochester, for respondent.

C. Paul Jones, State Public Defender, Michael F. Cromett, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by WOZNIAK, C.J., and HUSPENI and SCHUMACHER, JJ., without oral argument.

## OPINION

HUSPENI, Judge.

Appellant, Raymond Edward Moore, was convicted by an Olmsted County jury of first degree criminal sexual conduct under Minn.Stat. § 609.342, subd. 1(a) for actions allegedly occurring May 8, 1986. On appeal, he maintains the following trial court errors necessitate vacation of his conviction: allowing the prosecution to request conviction based on conduct occurring before his eighteenth birthday; admitting out-of-court statements made by the complainant's brother, under Minn.Stat. § 595.02, subd. 3; denying his motion for a psychological evaluation of the complainant and the complainant's brother; and allowing his conviction to be based on insufficient evidence. We affirm.

## FACTS

On various occasions in late April and early May 1986, appellant was retained as a babysitter by Ms. J. for her two minor sons, A.J., age 7, and B.J., age 9.

There was testimony that while babysitting appellant would put on plastic finger tips belonging to B.J. and grab the boys by their genitals and buttocks. There was also testimony that appellant would put his finger between the legs of the children's stuffed animals and tell the children "suck it." Appellant also allegedly tried to stuff the animals down the boys' underwear. Ms. J. was not aware of any of these actions.

On May 8, 1986, appellant's 18th birthday, Ms. J. again asked him to babysit the boys. When appellant arrived at the J.'s residence, Ms. J. asked appellant to get A.J. from his friend's house.

After finding A.J., appellant chased A.J. around a parked car several times to catch him to get him to come home. There was conflicting testimony regarding whether, after appellant caught A.J., he grabbed A.J.'s genitals. Upon arriving home, A.J. was quite angry but, because Ms. J. was in a hurry to leave, she did not inquire why.

Both children allege that sometime after sending them to bed that evening, appellant entered their room, lowered his pants and told A.J. to suck his penis. Both children claim that after A.J. sucked on appellant's penis, appellant sucked on A.J.'s penis. However, on cross-examination, B.J. indicated that he did not remember whether appellant sucked A.J.'s penis.

When B.J. threatened to tell his mother what happened, appellant told him "Your mom won't believe you. You're just a kid and I'm bigger than you and I'm eighteen." Appellant then told B.J. that he would show B.J. his posters of women in swimsuits. The two also discussed a promised purchase by appellant from B.J. of some STAR WARS cards.

When Ms. J. arrived home, she spoke casually with appellant on the front steps about various subjects including the fact that it was his birthday. During this chat, the children were present and did not act peculiarly.

On Saturday, May 10, 1986, during a birthday party for B.J., he told his mother "When Raymond was baby sitting the other night he sucked on A.J.'s penis." Later that day, B.J. told his mother what happened in greater detail and she called the police.

Two days later, each child was separately interviewed by child protection unit officers out of the presence of their mother. Tapes of these interviews were played at trial.

Based on the interviews, appellant was requested to speak to an officer in a taped conversation. In a tape of that conversation, which was also played at trial, appellant either did not respond to or denied the boys' accusations.

B.J. and A.J. saw professional counselor Sandra Garry twice in July and once in October 1986. Out-of-court statements of B.J. and A.J. to Ms. J., to a child protection officer and to counselor Garry were declared admissible under Minn.Stat. § 595.02, subd. 3. Upon conviction of first degree criminal sexual conduct after a jury trial, appellant was sentenced to the presumptive term of 43 months.

## ISSUES

1. Should appellant's conviction be vacated because it could have been improperly based on events occurring before his eighteenth birthday?

2. Did the trial court improperly admit statements made by the complainant's brother regarding appellant's conduct?

3. Did the trial court err in denying appellant's motion for a psychological evaluation of the minor children B.J. and A.J.?

4. Is the evidence sufficient to sustain appellant's conviction?

## ANALYSIS

### I.

■ The date of appellant's alleged abusive conduct was May 8, 1986, his eigh-

teenth birthday. He challenges the trial court's jurisdiction over him by maintaining the complaint was improperly drafted to read that his conduct occurred "during May, 1986" instead of alleging a specific date. He argues that this language, plus imprecise references by both the prosecution and the court to the date of his alleged conduct, combined with testimony that he sexually abused the children before May 8th, allowed the jury to improperly convict him of a felony based on conduct occurring before his eighteenth birthday. Citing *State v. Anderson*, 394 N.W.2d 813 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 12, 1986), appellant argues that this requires vacation of his conviction. We disagree.

*Anderson* is distinguishable from the present case. There, a fourteen-year-old defendant had been referred for trial as an adult in connection with an intrafamilial sex abuse crime requiring multiple penetrations over an extended period of time. At trial, testimony referred to penetrations occurring both before and after the defendant reached age 14. Upon appeal we stated:

> [I]t is impossible to determine whether the jury in reaching its decision may have considered acts allegedly occurring before [appellant's fourteenth birthday]. As a result, we cannot determine that *conviction for this multiple-act crime* was based only on acts occurring after appellant became fourteen years of age. The conviction must therefore be reversed and the matter remanded for a new trial with evidence limited to the time after appellant reached the age of fourteen.

*Anderson*, 394 N.W.2d at 816 (emphasis added).

Here, appellant was convicted of first degree criminal sexual conduct under a statute which required only a single penetration. *See* Minn.Stat. § 609.342 (1985). There was no testimony in this case regarding penetration on any date other than May 8, 1986. The testimony of abuse occurring

before appellant's 18th birthday refers only to grabbing the boys with the plastic fingertips. The jury could not have relied on such testimony in finding appellant guilty. *See State v. Shamp*, 427 N.W.2d 228, 231 (Minn.1988).

References by the trial court and prosecutor to events occurring in "May" or "May, 1986" were not objected to by appellant and, additionally, were harmless because they were outweighed by more frequent references identifying the exact date of appellant's alleged conduct as "May 8" or "May 8, 1986." *See State v. Caron*, 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974). Further, when instructing the jury, the court explicitly required:

the [defendant's alleged conduct] has to have taken place in Olmsted County and *it has to have taken place on May 8th, 1986.*

(Emphasis added.) A similar instruction was given in submitting the alternate charge of second degree criminal sexual conduct to the jury.

## II.

Minn.Stat. § 595.02, subd. 3 reads in pertinent part:

An out-of-court statement made by a child under the age of ten years * * * alleging, explaining, denying, or describing any act of sexual contact or penetration performed with or on the child * * * not otherwise admissible by statute or rule of evidence, is admissible as substantive evidence if:

\* \* \* \* \* \*

(c) the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

Under Rule 803(24):

[a] statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name, address, and present whereabouts of the declarant.

The trial court permitted B.J. to testify regarding his out-of-court statements to his mother, the officer and Garry by ruling them admissible under Minn.Stat. § 595.02, subd. 3. On appeal appellant argues, and the state concedes, that this ruling was improper because the statute only pertains to the testimony of victims, not witnesses. *See* Minn.Stat. § 595.02, subd. 3; *State v. Bellotti*, 383 N.W.2d 308, 313 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Apr. 24, 1986). Appellant contends that admission of B.J.'s testimony was reversible error because the trial court had ruled B.J.'s statements inadmissible under Minn.R.Evid. 803(24). The state argues both that the trial court did not so rule and that in any event B.J.'s statements were admissible under Rule 803(24). We find the state's argument persuasive.

Both parties cite the same passage from the transcript in support of their Rule 803(24) arguments:

THE COURT: I am not making any finding * * * under the Rules of Evidence in 803(24), because I understood that the application by the State was for its admissibility under 595.02 and I have never understood that any of these hearings were for admissibility under 803(24). * * * *I am not persuaded here that the notice was given to the defendant for admissibility under 803(24).* I think the notice was given, if it was given—It was given for its admissibility under 595.02, * * *.

(Emphasis added.)

Appellant cites only the emphasized sentence to support his position. In context, however, the sentence is part of an extended discussion which followed appellant's assertion that B.J.'s statements had been er-

roneously admitted. The state urged that B.J.'s statements were admissible under Minn.R.Evid. 803(24) regardless of their admissibility under the statute. The trial court expressed uncertainty about whether the state's notice to appellant in seeking admission of B.J.'s statements under the statute was sufficient to qualify as notice for admission under the rule also.

The state gave notice on July 10, 1986, that it intended to offer A.J.'s statements. Appellant responded with a motion in limine seeking to prohibit the state "from offering out-of-court statements made by the alleged victim *or the alleged victim's brother* to other witnesses." (Emphasis added.) Hearings regarding admissibility of both children's statements and their competency to testify were held in December 1986. Appellant was tried February 2–4, 1987. At no point was there an objection to the omission of B.J.'s name from the original notice.

■ Appellant maintains that the "notice" he received on the day of the trial that the state was seeking admission of the statements under 803(24) was insufficient. We disagree. Appellant has never alleged that notice under the statute was insufficient. Any difference between notices under the statute and under the Rule would be grammatical only. Appellant had almost seven months' actual notice that the state sought to introduce B.J.'s statements. We find no prejudice resulting to appellant from notice that was "improper" in form only.

Finally, Minn.Stat. § 595.02, subd. 3 is "a legislative enactment of an exception to the hearsay rule," *State v. Carver,* 380 N.W.2d 821, 825 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Mar. 27, 1986). Because "the key issue in determining whether hearsay testimony is admissible under Rule 803(24) is the hearsay's trustworthiness," *State v. Whiteside,* 400 N.W.2d 140, 146 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Mar. 18, 1987), any problem with the *form* of the notice is outweighed by the court's specific determination that the statements were sufficiently reliable for admission under the statute.

### III.

■ Appellant maintains that the trial court abused its discretion in denying appellant's motion to conduct psychological evaluations of B.J. and A.J. to determine their competency. We find no abuse of discretion.

Appellant argued that competency evaluations would allow a more definite conclusion regarding A.J.'s cognitive development, his ability to accurately relate what happened, and would reveal whether possible undue influence on A.J. had hampered the children's ability to distinguish between what actually happened and what they said happened.

> Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal * * * except as provided in this subdivision:
>
> *       *       *       *       *       *
>
> (f) * * * children under ten years of age, if any of them lack capacity to remember or relate truthfully facts respecting which they are examined, are not competent witnesses.

Minn.Stat. § 595.02, subd. 1(f) (1986). "The statute regarding witness competency begins with the presumption that all witnesses are competent." *State v. Fitzgerald,* 382 N.W.2d 892, 894 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Apr. 24, 1986).

Generally, "[c]ase law supports a concern about possible harassment of, or harm to, victims through adverse examinations." *State v. Cain,* 427 N.W.2d 5, 8 (Minn.Ct. App.1988).

> [T]he decision to order an [adverse] examination for the purpose of determining a child's competency as a witness is within the discretion of the trial court,

*State v. Holmes,* 374 N.W.2d 457, 460 (Minn.Ct.App.1985), *pet. for rev. denied*

(Minn. Nov. 26, 1985) (citations omitted). However, that discretion is limited:

> We have previously indicated the rules of criminal procedure do not even sanction the *deposition* of a crime victim, absent extraordinary circumstances, partly because of the possible harassment to the victim.

*Id.* at 459. Limited trial court discretion is especially the case with adverse psychological examinations in criminal cases. *See Cain,* 427 N.W.2d 5, 8–9 (a psychological examination was "limited to a nonintrusive examination which [did] not approach the scope of a deposition"); *State v. Sullivan,* 360 N.W.2d 418, 423 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Apr. 12, 1985) (not abuse of discretion to deny appellant's motion for psychological examination of child in criminal sexual conduct case). A determination of the children's competency to testify was yet to be made when appellant's motion was denied. The trial court subsequently conducted its own examination of the children to evaluate their competency. There was no abuse of discretion by the trial court in refusing to permit appellant to conduct psychological examinations of the children.

### IV.

■ In attacking the sufficiency of the evidence against him, appellant alleges that the interviewing techniques used by the child protection officers were suggestive and that the testimony of A.J. and B.J. raised questions regarding their veracity. We disagree.

> Generally review of the sufficiency of the evidence in a criminal case is limited to ascertaining whether, under the evidence contained in the record, the jury could reasonably find defendant guilty of the offense charged. In making this determination [appellate courts] view the evidence in the light most favorable to the state and assume that the jury believed the state's witnesses and disbelieved contradicting testimony.

*State v. Brouillette,* 286 N.W.2d 702, 705 (Minn.1979). A verdict is to be upheld if the jury,

> acting with due regard for the presumption of innocence and the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [the] defendant was proven guilty of the offense charged * * *.

*State v. Norgaard,* 272 Minn. 48, 52, 136 N.W.2d 628, 632 (1965).

That the review process is to be "painstaking," *State v. Ellingson,* 283 Minn. 208, 211, 167 N.W.2d 55, 57 (1969), does not change the fact that "the evidence, direct and circumstantial [is] viewed most favorably to support a finding of guilt." *Id.*

In each instance where appellant's expert testified to particular deficiencies or improprieties in police interviews of the children and the potential effect on testimony, the state countered with its expert and police testimony regarding the care exercised in interviewing the children. Viewing the evidence in the light most favorable to the state and remembering that "weighing the credibility of witnesses is the exclusive function of the jury," *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980), we believe the jury could reasonably have believed the testimony of the children.

Appellant suggests that the children fabricated the story of what happened based on their knowledge of him and because they were angry with him; A.J. because he was brought home from his friend's house and B.J. because appellant did not purchase the STAR WARS cards which he had previously promised to buy. These are matters of credibility and therefore are within the province of the jury. *See Brouillette,* 286 N.W.2d at 705.

### DECISION

Because appellant's conviction was not based on events occurring before his eighteenth birthday and because there was no reversible error either in the trial court's admission of B.J.'s statements or in its

denial of appellant's request for a psychological evaluation of the children, we must affirm.

AFFIRMED.