644 So.2d 1099 (1994)
STATE of Louisiana
v.
Joseph P. HUCK.
No. 94-K-2005.
Court of Appeal of Louisiana, Fourth Circuit.
October 25, 1994.
Harry F. Connick, Dist. Atty., Sharon Andrews, Asst. Dist. Atty., Margaret E. Hay, Student Practitioner, New Orleans, for relator.
Ross Scaccia, Orleans Indigent Defender Program, New Orleans, for respondent.
Before SCHOTT, C.J., and BYRNES and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Defendant was charged with three counts of molestation of a juvenile, one count of aggravated sexual battery, and one count of *1100 attempt aggravated sexual battery. He was arraigned and pled not guilty. The trial court granted defendant's oral motion to have the victims, his minor sons and daughter, evaluated by a psychologist chosen by defendant. The State's motion to reconsider this ruling was denied. The State sought writs in this court, 94-K-1734, writs were granted and the case remanded for a contradictory hearing on defendant's motion. A contradictory hearing on the defendant's motion was held, after which the trial court again ordered the evaluations. The State now comes before this court seeking relief from this ruling. The defendant was given an opportunity to respond to the state's application, but failed to do so.

STATEMENT OF FACTS
Expert psychological/psychiatric testimony was adduced at the 29 September 1994 hearing. Defendant called Allen James Klein, a clinical psychologist. Klein testified that he had spoken to defendant on two, possibly three occasions. The only background Klein had was that provided to him by defendant, in which defendant denied having molested his children. Klein had no prior knowledge that the children were receiving psychotherapy. Klein testified that he "believe[d] there are three children. I would be hard press [sic] to even tell you their ages other than they are latency age children from recollection, six to ten." The children are eight, nine and eleven years old. Klein admitted that he had nothing more than some very brief telephone conversations with defense counsel, and did not have a well-defined sense what the nature of the proposed evaluation was other than that there was some question about whether defendant did indeed molest the children.
Klein viewed his task as "to speak to the competency of the children to report accurately to what they believed to have happened to them without having been led by suggestion, without their being any distortion to their thinking. I would be curious about their memory process, their developmental level and how accurately that [sic] they could provide information with regard to what they are saying indeed happened to them." When asked by the court what if any harm he thought the children would suffer as a result of his evaluation, Klein replied, "[i]f the children have been in therapy I certainly think what I would do is not going to traumatize them." He also testified that "if I felt that anytime during the course of the evaluation that the evaluation was traumatic I would probably seek consultation with their therapist and make some determination if I should continue or not." Klein admitted that while he has an "extensive history" of evaluating sexually abused children, he does not do a great deal of therapy with young child victims. His clinical staff performs such therapy; however, it would be Klein and not his staff who would examine the victims in this case. Klein was unable to estimate the number of sessions with each of the children that would be required to conduct his evaluations. He testified that there was no specific test that he planned to administer to the children to test their reliability or assess their developmental status. Instead, he said he plans to "talk about what they can tell me about their life, about living with their father and what I do with a picture I am getting of these children it has been rather chaotic [sic]."
Klein said he would not make his evaluation of the children in the courtroom or in chambers as the children relate the incidents at the time of trial because, "I want to personally feel comfortable in doing the evaluation. I don't want to have any consideration of how I am performing or what I am doing."
Klein referred to a previous case in which the state wanted to tape his evaluation of the children, wherein he refused the suggestion, "[b]ecause number one audio taping does not give a full description of what is transpiring between children. Then if I begin video taping and audio taping that then becomes an intrusion on the whole process." The trial court did not allow the prosecutor to inquire as to the manner in which Klein saw taping as an "intrusion."
Maureen Gremaldi, a licensed therapist and licensed practicing counselor, testified at the hearing. She has seen RH, one of the victims, recently for 21 twice-a-week sessions and previously saw him between September *1101 and December at Children's Hospital. She testified as follows:
"In RH's case I think as in the other children it would be detrimental for him to reveal the abuse to yet another stranger or another person that he is not familiar with.... RH suffers from post traumatic stress disorder. Any type of recollection or interview that is going to cause him to bring up these memories is going to be detrimental to him. RH has suffered severe nightmares, dropping grades. He is an extremely intelligent child. He has been unable to socialize with the children his own age. He has had self-injurious [sic], injuring himself as well as injuring other people. These symptoms arise when RH is in a situation where the trauma is relived...."
Gremaldi testified that while RH reveals incidents to her in therapy, which she described as a safe environment with someone with whom he has a long-term relationship, this is very different than examination by a stranger "no matter how qualified or no matter how wonderful his rapport is with children."
Roberta Carruth, a board certified social worker on the clinical faculty of LSU School of Medicine, testified that she treats KH and JH through the Office of Community Services, and has been working with both children for over a year.
Carruth sees KH twice a week, and described the child as suicidal. KH takes antidepressant medication and has been evaluated by Dr. Mark Sams for suicidal ideation. Carruth testified that KH's suicidal symptoms could be exacerbated by the proposed evaluation by Dr. Klein.
Carruth sees JH once a week. She describes him as having a tendency to become aggressive at school and with his siblings, and expressed an opinion that if examined by Klein, JH might become more aggressive in both environments.
Carruth submitted a written evaluation to the trial court, in which she opines:
"Further evaluations would be detrimental to these children.
... Should they be required to disclose their traumatic experiences to yet another evaluator, they are likely to experience such as an emotional violation. There is a strong likelihood that their behavior would further deteriorate, disrupting their placements and setting back their progress in psychotherapy thus far. I strongly recommend against further evaluations of these children."
The State, in compliance with LSA-C.Cr.P. art. 716 et seq. provided defendant copies of the independent psychological/psychiatric evaluations conducted by Dr. Seth Kunen for the Office of Community Services, in July and August, 1993, some 5 months prior to defendant's arrest.[1] Of significance to our inquiry are results of standardized measurements of anxiety and depression as they were applied to these three children. JH's anxiety level, as measured by the Revised Children's Manifest Anxiety Scale, "is quite high, and exceeds the anxiety levels of 95% of children his age. JH's physiological anxiety scores, (e.g. somatic problems), were at the 70th percentile, his social concerns were at the 81st percentile, and his worry/over-sensitivity scores were at the 96th percentile." The results of the Child Depression Inventory "reveal that JH is experiencing a significant level of sadness and/or depression." RH was described as "clearly wary of his father," and exhibited a "somewhat elevated" general level of anxiety, exceeding that of 80 percent of children his age. Kunen expressed concern that "RH may be repressing his emotional experience of the abuse. If this is the case, his emotional turmoil may surface later in the life with severe psychological consequences." Kunen described KH as "more emotionally volatile... than her brothers," exhibiting "a very low frustration tolerance level which manifested itself in an unwillingness to persist on test items that she found challenging." While her general anxiety level and depression level were found to be within a normal range, Kunen found as a result of a nonverbal *1102 screen for emotional problems, that "she is currently experiencing emotional problems, which may not be verbally accessible (i.e., not reflected in the verbally based anxiety or depression scales." This appraisal is confirmed by subsequent findings of KH's suicidal tendencies.
At the conclusion of the hearing, Klein said his prime interest would be the children's interest. The prosecutor argued that the purpose of Klein's examination was not the health of these children, but "to obtain testimony to get Mr. Huck off of the charges of molesting his children." We find that the testimony of record contradicts Klein's claim and supports the State's conclusion. Klein's testimony shows that his prime concern is his own "comfort," and his refusal to reveal the questions he proposed to ask the children or to be specific with respect to the testing he would perform, together with his rejection of audio and video taping of his evaluations, lends support to the State's view of the purpose of the Klein evaluations.

APPLICABLE LEGAL PRINCIPLES
The State argues that the trial court erred by ordering the examinations because the defense failed to show a compelling reason for them and because the examinations could harm the victims. There is no statutory provision either permitting or prohibiting the court's order of such an examination. Defendant relies upon his due process right to confront the witnesses in this criminal proceeding. U.S. Const.Amend. 6; LSA-Const. Art. 1, § 16. The State of Louisiana has made the following declaration:
It is declared to be in the best interest of the state that children be spared from crimes of violence, and that persons who commit such crimes be prosecuted with a minimum of additional intrusion into the lives of such children. LSA-R.S. 15:440.1.[2]
The standard for review herein is whether the trial court abused its discretion by ordering the examinations. We find that it did so, grant the supervisory writ requested by the State and vacate the trial court's order requiring pre-trial examination of JH, RH and KH by Dr. Allen James Klein.
The statutory declaration of policy in LSA-R.S. 15:440.1 proceeds from a recognition of the growing problems arising from child abuse of various kinds. One commentator observed:
More alarming than the sheer number of children molested each year is the potential for severe psychological damage subsequent to the abuse. It is frequently claimed by courts, psychiatrists, child experts and commissions appointed by legislatures that child victims are often profoundly disturbed, either by the offense or by the developments after its discovery. Indeed, the avoidance of additional emotional damage is a main rationale for state child shield laws.[3]
Other Louisiana writers note:
Many critics, including former Chief Justice Burger, have decried the plight of victims during the lumbersome course of a criminal prosecution, from the victim's first outcry to the police to his last answer given on cross-examination at trial. While we are still willing to put adult victims through such an obstacle course in the name of protecting the accused's due process rights to full confrontation of his accuser, there is little to justify the exaction of such human costs when the victim is a child.[4]
The balance between the accused's right to confrontation and the rights of a child victim was addressed by this Court a decade ago. In State v. Garay, 453 So.2d 1003 (La.App. 4th Cir.1984), the defendant was charged with indecent behavior with a five-year-old girl in the nursery where defendant was employed. The defendant sought to have the victim examined by a psychiatrist of his choice to determine if the victim's accusation *1103 was a product of prior abuse by her father and abuse inflicted upon her in a foster home. The trial court denied this request, and granted the defendant's alternative request for access to the victim's medical, psychiatric, and social history reports. On appeal the defendant contended that the trial court's denial of his motion violated his constitutional rights to confront the victim and to present an adequate defense. This court disagreed, finding that the trial court did not abuse its discretion by refusing to order the examination, especially where, as in the instant case, the defendant received the victim's records.
In State v. Gordon, 463 So.2d 665 (La.App. 4th Cir.1985), the defense sought the psychological examination of a seven-year-old child who had witnessed her mother's murder, in order to determine if "she was capable of testifying factually and accurately under the circumstances." Gordon, supra at 668. This court found the trial court did not abuse its discretion by denying the request, noting that the victim had already been evaluated by a psychologist just prior to trial, and the trial court had questioned her and found her competent to testify. This court also noted that the defendant "did not show that a need existed to have [the victim] reevaluated to prove her competency to testify at trial." Gordon at 669.
In each of the above-cited cases, the reviewing court had to determine whether the trial court abused its discretion by denying the motion for an examination. Here, by contrast, this court must determine if the trial court abused its discretion by granting the request. While this precise issue has not been presented in a reported Louisiana decision, a California appellate court reviewed such an order. In People v. Davis, 20 Cal. App.3d 890, 98 Cal.Rptr. 71 (1971), the court found that the trial court did not abuse its discretion by ordering the examination, based upon several factors including marital discord between the victims' mother and the defendant. Davis also noted that the victims could refuse to submit to the examination without sanctions being imposed on them, but evidence of their refusal would be admissible at trial. Davis' facts are readily distinguishable from those of the instant case. In Davis, the state charged the acts occurred in 1966 and 1967, when the victims were 12 and 13 years of age. The victims did not complain of the acts until 1969, and during the interval, a bitter domestic dispute had developed between defendant and the victims' mother. The examination was to be conducted in late 1970, when the victims were 16 and 17 years old, and one of the victims was pregnant. The court was not faced with the type of expert testimony present in the instant case that further examination would produce traumatic results in the victims. The California court found that the "complaining witnesses were of an age where that [domestic] dispute between their parents could have had a profound emotional effect upon them. The charges made by the complaining witnesses are essentially uncorroborated. Under those circumstances, it cannot be said on appeal that the trial judge abused his discretion in finding a compelling reason for a psychiatric examination."
In State v. Cain, 427 N.W.2d 5 (Minn.App. 1988), the court held the circumstances of the case supported the trial court's decision to order a psychological evaluation of the victims. In Cain, however, the children's guardian ad litem testified that she believed an independent psychological examination would not harm the children. The defendant's proposed examiner had made a detailed examination of the evaluations and methodology of the State's experts, unlike Dr. Klein in the instant case who admitted having virtually no knowledge of the treatment, methodology and evaluations in which the children had participated for over a year. Cain's expert testified concerning methodological infirmities in the examinations conducted by the State's experts, presenting evidence that the examinations the children had hitherto undergone were defective. There is no such evidence of record in this case. The Minnesota court noted:
Courts in other jurisdictions have allowed such an examination upon a showing of `compelling reasons' or upon a `substantial showing of need.'

Cain, supra at 8.
*1104 Here, unlike Cain and Davis, the defendant has shown no exceptional circumstances which would require that another evaluation be made; as noted above, the defendant's asserted reason for the evaluation is his due process right to confrontation. The United States Supreme Court addressed the right to confrontation in the context of child witness testimony of sexual abuse in Kentucky v. Stincer, 482 U.S. 730, 742, 107 S.Ct. 2658, 2665-66, 96 L.Ed.2d 631 (1987). In that case, the precise issue was whether the defendant had a constitutional right to be present at the children's competency hearing. The Supreme Court refused to extend defendant's right of confrontation, and rejected defendant's contention that the right attached because a competency hearing may be characterized as a trial or pretrial proceeding. Instead, the court found,
[I]t is more useful to consider whether excluding the defendant from the hearing interferes with his opportunity for effective cross-examination. No such interference occurred when respondent was excluded from the competency hearing of the two young girls in this case. After the trial court determined that the two children were competent to testify, they appeared and testified in open court. At that point, the two witnesses were subject to full and complete cross-examination, and were so examined. Kentucky v. Stincer, supra, 482 U.S. at 740, 107 S.Ct. at 2664.
Clearly, denial of Huck's motion for pre-trial examination of his children by Dr. Klein does not interfere with his opportunity for effective cross examination. There is no suggestion by defendant or by Klein that the examination would delve into the specific acts of abuse of which the defendant was charged. Klein, though vague in his testimony concerning his methods and procedures, testified that he would NOT determine whether the children are telling the truth or lying.
The Stincer court similarly rejected defendant's due process argument, noting that the defendant presented no evidence that his presence at the competency hearing would have been useful in ensuring a more reliable determination as to whether the witnesses were competent to testify, and that the witness at the competency hearing was not asked to discuss upcoming substantive testimony that might bear a substantial relationship to defendant's opportunity better to defend himself at trial. The court noted at footnote 20:
"Where the competency hearing bears a substantial relationship to the defendant's opportunity to defend, a court must then balance the defendant's role in assisting in his defense against the risk of identifiable and substantial injury to the specific child witness." Kentucky v. Stincer, supra, 482 U.S. at 746, fn. 20, 107 S.Ct. at 2668, fn. 20.
In the case at bar, we are dealing, not with a competency hearing that might be characterized as a part of the trial process, but with a request for a pre-trial examination of the child abuse victims. Thus, defendant seeks to extend his constitutional confrontation right even further than the point to which the Supreme Court refused to extend the right. Since the Supreme Court would approach a request for confrontation of the witnesses at a hearing which "bears a substantial relationship to the defendant's opportunity to defend" by balancing the defendant's constitutional right to confrontation against the "risk of identifiable and substantial injury to the specific child witness," we will apply the same balancing test herein.
As at both hearings, the State argues that the examinations should not go forward because of the potential harmful effect that the examinations may have on the victims. Our review of the testimony adduced at the hearing that this Court required the trial court to undertake reflects that the evidence clearly supports denial of defendant's request for additional examinations of the victims. Defendant's witness admits his examination might cause trauma to the children, and his only promise is that, should he believe that occurs, he "would probably seek consultation with their therapist." He did not outline a specific plan for his examination, or provide information as to any standardized testing to be implemented or specific question he would ask. His refusal to perform his evaluation concurrently with the trial process is based on his desire to "personally feel comfortable," and is not based upon a desire to proceed *1105 according to the best interests of the children. Competent therapists, who have been treating these children for over a year, unanimously warn against further examination in strong and clear language.
We find no compelling reason or substantial need that would provide a basis for the trial court's action in granting this examination. Balancing the defendant's need of a pre-trial examination against the risk of harm to the children, clearly the documented likelihood of trauma must prevail. Defendant has adequate opportunity through examination of the records provided by those who have examined the children and through examination in court or in chambers in connection with the trial, to elicit probative evidence of their capacity to testify.
We find the trial court abused its discretion in granting defendant's motion for examination of the three Huck children by defendant's expert as outlined in the trial court's order, and vacate the order of the trial court.
ON WRIT GRANTED. ORDER OF TRIAL COURT VACATED.
NOTES
[1] These reports provide, in detail, the children's accounts of the various specific acts of abuse by their father.
[2] This declaration is the first section of the statutory provision for electronic recording of testimony of child abuse victims under certain defined circumstances.
[3] Comment, "Television Trials and Fundamental Fairness: The Constitutionality of Louisiana's Child Shield Law," 61 Tul.L.Rev. 141, 147 (1986).
[4] McGough and Hornsby, "Reflections Upon Louisiana's Child Witness Videotaping Statute: Utility and Constitutionality in the Wake of Stincer," 47 La.L.Rev. 1255, 1257 (1987).