679 So.2d 184 (1996)
STATE of Louisiana
v.
John W. COLLIGAN.
No. CR95-880.
Court of Appeal of Louisiana, Third Circuit.
August 7, 1996.
*185 J. William Pucheu, Richard W. Vidrine, Ville Platte, for State.
Richard V. Burnes, Dmitrc I. Burnes, Alexandria, for John W. Colligan.
Before PETERS, AMY and SULLIVAN, JJ.
PETERS, Judge.
The defendant, John W. Colligan, was charged by bill of information with molestation of a juvenile in violation of La.R.S. 14:81.2. According to the bill of information, *186 the crime is alleged to have occurred on July 23, 1993. After trial on February 6 and 7, 1995, a jury found the defendant to be guilty as charged. The trial court then sentenced him to serve ten years at hard labor, and he has appealed his conviction and sentence, asserting ten assignments of error. Finding merit in several of these assignments, we reverse the conviction and remand the case to the trial court for further proceedings.

DISCUSSION OF THE RECORD
The defendant, John W. Colligan, was born on January 5, 1938; was fifty-seven years old at the time of trial; and is the grandfather of the alleged victim, A.F.[1] He is currently married to the former Jacqueline Ragio, whom he married approximately twenty-five years ago. He and his current wife have one child, Tanya, who was twenty-one years old at the time of trial. Colligan had previously been married to Ethel Lavergne from whom he was divorced in 1969. He and his first wife had two daughters. It is the minor daughter of one of these daughters who is the alleged victim in this criminal charge.
After the 1969 divorce, Colligan continued to support his daughters. Despite this financial support, tensions developed over Colligan's visitation with his daughters such that he began seeing them only once or twice a year. Eventually he lost touch with them. However, at Christmas of 1993, he became reunited with his daughter, the mother of the alleged victim, at a family Christmas party. By this time, his daughter had married and she and her husband had four children with A.F. being the youngest. Sometime after the party, A.F.'s mother telephoned the defendant and asked if she and her family could visit him. The two families began to socialize, and shortly after the reconciliation, A.F. and one of her brothers, T.F., began spending the night at their grandfather's house. T.F. was in his early teens at the time, and A.F. had just turned eight years old.[2]
The incident giving rise to this charge is alleged to have occurred on July 23, 1993. A.F. testified that on that day, she and T.F. were alone with the defendant in his home. According to A.F., at approximately 6:30 in the evening, T.F. was sitting in the kitchen at the bar eating dinner and she and Mr. Colligan were in the living room watching "Wheel of Fortune." Apparently, the house was designed so that T.F. could see the television in the living room while sitting at the bar. She contended that Colligan asked her to sit in his lap and he then proceeded to place his hand inside of her shorts and panties and touched her vagina. She testified that she asked him to stop and he removed his hand. He then asked her if she would sleep with him in his bed that night, and she said "no." T.F. claims to have seen his grandfather removing his hand from A.F.'s shorts. A.F. and T.F. then went to the defendant's bedroom where, according to the testimony of both, A.F. told T.F. what her grandfather had done. However, neither child reported the incident until over five months later.
On December 25, 1993, while her two older brothers were wrestling on the floor of their home, A.F. announced to them that she had been molested by her grandfather. The brothers then informed their parents and their grandmother of what A.F. had told them, the police were notified, and the current charges were brought. Both T.F. and A.F. testified that they did not initially tell anyone of the incident because A.F. was afraid that her father would whip her. She testified that she finally decided to tell on December 26 because "it was hurting my feelings." When questioned as to what she meant by that statement, she said that every time she thought about it she would start crying. When asked what made her think about the incident, she replied that she thought about it every time she wore the shorts she had worn the day of the incident. She testified that the shorts she was wearing on July 23, 1993, were her favorite outfit and *187 that she wore them all the time, even after the alleged violation.
It should be noted that even after July 1993, T.F. continued to visit his grandfather. However, the family harmony resulting from the reconciliation in early 1993 had already dissolved prior to December 1993. The entire family had ceased visiting with the defendant in October of 1993 after Colligan accused T.F. of breaking his lawnmower, breaking a small wagon, and reading a "nasty" book.
All of the defense witnesses testified that A.F. and T.F. were not at the Colligan residence on July 23, 1993, and that from the time of the reconciliation until the lawnmower incident, there was only one time that Mr. Colligan was alone at the house with A.F. and T.F. This one time was sometime around the last week of July 1993. The witnesses were able to remember the approximate date because it occurred when family members were involved in an automobile accident, and Mrs. Colligan; Tanya; and Rowena Broussard, a friend of Tanya's, went to the hospital to check on them. A.F. and T.F. also admit that there was only one time that they were ever alone in the house for any length of time with their grandfather. In his testimony, Mr. Colligan admitted that A.F. sat in his lap that night but denies putting his hand in her panties, touching her vagina, or molesting her in any way.
Other than the testimony of T.F. and A.F., there is no other evidence of the crime. Additionally, there is no evidence to suggest that Colligan should not be left alone with children at any time or that he presented a danger to children. In fact, despite having physical limitations and suffering from poor health because of prior injuries, Colligan had routinely babysat for a friend's grandchild for approximately two years.

OPINION
By his appeal, Colligan presents ten assignments of error. Because we find merit in the assignments relating to the trial itself and determine that these findings require reversal for further proceedings, it is unnecessary to address those relating to post-trial activity and sentencing. Therefore, we need only address the first four assignments of error.

Assignments of Error Numbers 1 and 2
In the first assignment, the defendant asserts that the trial court erred in refusing to grant his request for the appointment of a psychiatrist or psychologist to examine T.F. and A.F. In his second assignment, Colligan contends that evidence should have been allowed with regard to A.F.'s exposure to sexual discussions by her parents.
As to the first assignment, we find no merit in the argument. There is no statutory provision requiring the court to order psychological or psychiatric evaluations of the state's witnesses, and it is within the court's discretion to determine whether such evaluations are necessary in order for the defendant to adequately defend against the charges raised against him. State v. Huck, 94-2005 (La.App. 4 Cir. 10/25/94); 644 So.2d 1099. Thus, we are required to determine whether the trial judge abused his discretion in denying the defendant's motion to have A.F. and T.F. examined by a psychologist or psychiatrist. In addressing this issue, the courts have performed a balancing test by weighing the defendant's constitutional right to confront witnesses against the risk of identifiable and substantial injury to the child witnesses. Id. Thus, the courts have viewed this request for evaluation of opposing witnesses by the defendant as an extension of the confrontation clause. Id. In the present case, we do not feel that the trial court abused its discretion in this case by denying the requested evaluations.
We do find merit as to the second assignment of error. The defendant attempted to introduce testimony relating to sexual discussions by A.F.'s family that had taken place in her presence. The relevant portion of the transcript upon which the objection of hearsay was sustained consisted of the following direct examination of Jacqueline Colligan:
Q. When [A.F.'s mother] and her husband and the children visit were there open discussions about sex?
A. Yes they, I mean they talked about it, they would just say anything they wanted *188 like, I don't know if I was supposed to say something.
Q. Did [A.F.'s mother] and her husband openly discuss their sexuality in front of your, in front of their kids and in front of ya'll?
A. Yes sir sitting at the table one Sunday, I think it was a Sunday.
Q. What was said at the table?
A. Well he said, I hate to....
At this time, the state did not formerly object but simply asked to approach the bench and asked the trial court to admonish the jury "to disregard the response made to the last question." The trial court then made the following statement to the jury:
The jury will disregard that answer to the last question as though it were never spoken, ya'll understand, all right because I'm sustaining the State's objection on the grounds that is was hearsay and inadmissible evidence.
(Emphasis added).
The answer objected to was actually never completed, and it was the court, not the state, that actually supplied the objection.
The definition of hearsay is contained in La.Code Evid. art. 801(C):
"Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.
(Emphasis added).
The defendant contends that the contested testimony was not being offered to prove the truth of the matter stated and therefore was not hearsay. We agree. A statement made to show its effect on the state of mind of the person who hears it is not hearsay. State v. Martin, 458 So.2d 454 (La.1984). The statement's value does not lie in its truthfulness but rather merely in the fact that it was made. State v. Eaton, 524 So.2d 1194 (La. 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989). Mrs. Colligan's testimony as to discussions of sex in front of A.F. and T.F. by their parents is relevant in this case to determine the effect that these conversations had on A.F. and T.F., particularly given the fact that they provide the only basis for the charges against the defendant. Whether the statements were actually made depends on the veracity of Mrs. Colligan, not on the veracity of the out-of-court declarants, A.F.'s parents. Id. Thus, it will be up to the jury as the trier of fact to determine if Mrs. Colligan is a credible witness such that they wish to give credence to her testimony.
Not only is this testimony not hearsay but also it is extremely relevant in this case. Surrounding circumstances are extremely relevant to the validity of charges in a case such as this where there is no physical evidence and the only evidence is conflicting testimony. The aim of the judicial system is not only to ensure that the guilty are incarcerated but also to ensure that an innocent man is not wrongfully punished. This is why a defendant is constitutionally guaranteed the right to present a defense. La.Code Evid. art. 401 defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence will not be admitted only if the trial court determines that its relevancy is outweighed "by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403.
The evidence at issue in this case is relevant to the central issue of whether or not Colligan is guilty of the crime of which he is charged. Weighing the relevance of the evidence against the danger of unfair prejudice in this case leads us to conclude that its relevance far outweighs any danger of unfair prejudice. At trial, A.F. used the words "vagina" and "molestation" freelywords that are not normally found in the vocabulary of such a young child. Additionally, the five-month delay between the incident and the report raises questions. But perhaps what makes this inquiry most relevant is a statement by A.F.'s mother which does not appear in the trial record but rather in the presentence investigation report. In that report, the officer who prepared the report stated that A.F.'s mother informed him that the *189 defendant had never been previously charged with similar crimes but that "he had done it in the past." In fact, she suggested that she had been a victim of molestation at his hands when she was a child. Such a statement seems inconsistent with her allowing A.F. to visit the defendant without appropriate supervision and lends credibility to Colligan's argument that this whole matter is a vendetta.
We therefore conclude that the trial court erred in supplying the objection for the state, in concluding that the incomplete statement was hearsay, and in admonishing the jury to disregard the statement.

Assignment of Error Number 3
By this assignment the defendant contends that error was committed when the assistant district attorney made the following statement in his rebuttal argument to the jury:
The State of Louisiana is now going to put this case in your hands. You represent the people of Evangeline Parish. You have a situation and not one on one, but you have two witnesses, two eye witnesses to an act of sexual misconduct and now it's up to you to return a verdict of guilty. The people of Evangeline Parish (unintelligible), thank you.
It is the defendant's contention that this statement misstated the jury's function and implied a connection between the prosecutor and the jury. We agree.
Closing arguments in criminal cases should be limited to the evidence admitted, the lack of evidence, conclusions of fact that may be drawn therefrom, and the law applicable to the case. La.Code Crim.P. art. 774. Additionally, "[p]rosecutors should not turn closing argument into a plebiscite on crime by making overt references to community sentiment." State v. Deboue, 552 So.2d 355, 364 (La.1989), cert. denied, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 174 (1990). We find that the attempt by the prosecutor to convey the message that the jury represented "the people of Evangeline Parish" was an improper closing argument. The jury's function is found in La.Code Crim.P. art. 802, and nothing therein indicates a representative obligation. In fact, the jury should deliberate without regard to public opinion.
The state argues that the defendant failed to raise an objection as to the prosecutor's comments at the time of trial and cannot now claim error. La.Code Crim.P. art. 841(A) provides in pertinent part as follows:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.
Although this article sets forth what appears to be a hard and fast rule, the jurisprudence has developed limited exceptions to its application. See State v. Lee, 346 So.2d 682 (La. 1977). Additionally, the supreme court has noted "that a prosecutor's prejudicial comments in closing argument may be considered by a federal court to violate federal due process guarantees even in the absence of a defense challenge or objection at trial." Id. at 685. Using this due process reasoning, the supreme court has held that despite lack of timely objection by defense counsel to the prosecutor's closing argument, if the remarks are extremely inflammatory and prejudicial, then a reversal is required. See State v. Hayes, 364 So.2d 923 (La.1978) [quoting U.S. v. Briggs, 457 F.2d 908 (2d Cir.1972)]. Thus, despite the lack of a timely objection by defense counsel in this case, we find the issue is properly before us.

Assignment of Error Number 4
In this assignment of error, Colligan alleges that the trial judge committed error in his charge to the jury when he made comments which could be construed to be a comment upon the evidence. The portion of the jury charge at issue is as follows:
The defendant is charged with molestation of a juvenile. John W. Colligan, at the Parish of Evangeline on or about the 23rd day of July, 1993 did wilfully and unlawfully violate Revised Statutes 14:81.2 relative to molestation of a juvenile in that being over the age of 17 years did commit the lewd and lascivious act of molestation upon the person of [A.F.] and in the, and in the presence of [A.F.], a child under the age of 17 years with the intent of arousing or gratifying the sexual desires of himself or and/or the said child by the use of *190 influence by virtue of a position of control or supervision over the child.
(Emphasis added).
La.Code Crim.P. art. 772 provides:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
In this case, the trial judge informed the jury that the defendant was guilty. The state contends that the judge was merely reading the bill of information to the jury, that this was clear to the jury, and that the jury was not misled. While the trial judge's action can be interpreted as the state suggests, we cannot agree that such an interpretation is the only reasonable interpretation to a jury. At no time did the trial judge inform the jury that he was only reading the bill of information to them. The jury is comprised of six ordinary people with little or no knowledge of the law or trial procedure. One cannot say that it is not prejudicial to the defendant when the trial judge informs them that the defendant is guilty. Due to his position of authority in the courtroom, the jurors would no doubt place a great deal of weight on the fact that the judge, with his vast knowledge of the law and experience in the courtroom, has just informed them that he believes the defendant to be guilty. We do not believe that the trial judge intentionally led the jurors to believe that the defendant was guilty; it was no doubt only an oversight on his part to not inform the jurors that he was reading from the bill of information. Despite his good intentions, the trial judge's charge resulted in a comment on the evidence by the presiding judge to the maximum extent imaginable. The judge in our adversary system of justice is delegated to the role of an impartial umpire. State v. Williams, 375 So.2d 1379 (La.1979).
The no-judge-comment rule is designed to safeguard the role of the jury as the sole judge of the facts on the issue of guilt or innocence. State v. Hodgeson, 305 So.2d 421 (La.1974) and decisions there cited. Thus, if the effect of a question or comment is to permit a reasonable inference that it expresses or implies the judge's opinion as to the defendant's innocence or guilt, this constitutes a violation of the defendant's statutory right to no-comment and thus requires reversal. State v. Green, 231 La. 1058, 93 So.2d 657 (1957).
Id. at 1381 (footnote omitted).
We find that the trial judge's comment in this case could reasonably be inferred to express the judge's opinion as to the defendant's guilt.
Additionally, although the state has not argued it with regards to this assignment of error, we are cognizant of the fact that the defendant failed to raise this objection at the time of trial. For the same reasons stated relative to the prosecutor's remarks, we conclude that this issue is properly before us despite the defendant's failure to comply with the contemporaneous objection rule.

Summary
We note that the prosecutor's comment, standing alone, might not be adequate reason to reverse this conviction. A conviction will not be reversed because of an improper closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Bates, 495 So.2d 1262 (La.1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987). Thus, the proper standard of review is whether the prosecutor's comments in closing argument rendered the trial fundamentally unfair and the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) [quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)].
[A]s this Court has repeatedly stated, prosecutorial misconduct that affects verdicts will not be tolerated and will result in reversals of convictions.
Each case concerning alleged impropriety during closing arguments is different from all others and must be individually evaluated.
State v. Green, 416 So.2d 539, 541-42 (La. 1982) (footnote omitted).
*191 As a general rule, courts are hesitant to reverse convictions on the basis of prosecutorial argument because jurors are generally repeatedly admonished that they must decide the case on the evidence and that the arguments of counsel are not evidence. State v. Duplessis, 457 So.2d 604 (La.1984). Additionally, great faith is placed in the idea that jurors will use their common sense, fair-mindedness, and ability to distinguish meaningful evidence from unwarranted comments. Green, 416 So.2d 539. However, this does not mean that there will not be instances where prosecutorial comments will rise to such a level as to have influenced the jurors and contributed to the verdict. As pointed out by the supreme court, each case must be determined on an individual basis to determine if the prosecutorial argument was so prejudicial as to require reversal of the defendant's conviction.
Additionally, standing alone, the comment of the trial judge might not be sufficient to reverse the conviction. The trial judge earlier in his jury charge had stated:
If I have given you the impression that I have an opinion concerning any facts of this case you are to disregard that impression. If I have given you the impression that I have an opinion concerning the guilt or innocence of the defendant, you are to disregard that impression.
Without the other errors, this might have been sufficient to undo the damage caused by his jury instruction which seemed to inform the jury that the trial judge believed the defendant to be guilty. However, when the record is viewed as a whole, it is our determination that the possible prejudicial effect on the jury's verdict caused by the error during closing argument, when coupled with the effect of the error during the jury charge and the failure to allow the defendant to present a full defense, simply cannot be said to be harmless. The totality of the circumstances in this case would cause fundamental due process to be violated if Colligan's conviction were allowed to stand in the face of the errors committed.
We make no comment as to the guilt or innocence of the defendant as that issue is not yet before us. Additionally, this ruling, reversing the defendant's conviction for the reasons set forth, precludes evaluation of the assignments of error associated with the sentence.

DISPOSITION
For the foregoing reasons, the defendant's conviction is vacated and set aside and this case is remanded to the trial court.
REVERSED AND REMANDED.
AMY, J., dissents.
NOTES
[1] Because of her age, the victim and her immediate family members will be referred to herein by initials.
[2] Neither T.F. nor A.F. testified as to their exact birthdays. T.F. testified that at the time of trial, he was fifteen years old, and A.F. testified that at the same time, she was nine years old. The presentence investigation report places A.F.'s birthday at February 10, 1985, which would have made her eight years old in July 1993.