*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0166**

State of Minnesota,
Respondent,

vs.

Miguel Angel Martinez-Duran,
Appellant.

**Filed February 23, 2015
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CR-11-31295

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Kirk M. Anderson, Anderson Law Firm, PLLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and Connolly, Judge.

**CONNOLLY**, Judge

On appeal from his conviction of first-degree criminal sexual conduct, appellant argues (1) the evidence was not sufficient to convict him; (2) he was denied his right to a fair trial because his right to present a complete defense was violated; (3) the district court abused its discretion in admitting the videotape of the CornerHouse interview; (4) the district court abused its discretion in denying his motion to compel an adverse psychological evaluation of the victim's mother; and (5) any evidence obtained during the second search of appellant's apartment was unlawful because a second warrant was not obtained and the consent to search was invalid. We affirm.

## FACTS

On October 3, 2011, A.M. was doing laundry when she noticed fluid on a pair of her daughter J.L.R.'s underwear. A.M. took J.L.R. out of school and questioned her about the underwear. After being assured that she was not in trouble, J.L.R. reported that her stepfather, appellant Miguel Angel Martinez-Duran, had been sexually abusing her. A.M. immediately took J.L.R. to the hospital for a medical examination. The following day, she took J.L.R. to CornerHouse for a forensic interview regarding the allegation of sexual abuse.[1]

On October 4, law enforcement officers arrested appellant. Appellant refused to give the officers consent to search the apartment that he shared with A.M., J.L.R., and his two sons. On October 5, officers obtained and executed a search warrant on the

---

[1] CornerHouse conducts forensic interviews of alleged victims of abuse.

apartment. The officers did not seize any of J.L.R.'s underwear at that time. An officer changed the locks on the apartment and retained a key. After the search, A.M. informed an officer that she could show him where J.L.R.'s underwear was located in the apartment. A.M. met an officer at the apartment and signed a "consent to search" form. The officer and A.M. entered the apartment and the officer seized J.L.R.'s underwear.

Based on these events, the state charged appellant with one count of criminal sexual conduct in the first degree in violation of Minn. Stat. § 609.342, subd. 1(a) (2010). On March 7, 2013, appellant filed five pretrial motions, asking the district court to (1) compel discovery of J.L.R.'s diary, (2) order the state to provide a bill of particulars, (3) compel A.M. to undergo an adverse psychological evaluation and/or conduct a competency hearing to evaluate her ability to testify at trial, (4) preclude the admission of the CornerHouse interview, (5) preclude J.L.R.'s testimony or conduct a taint hearing to determine whether she could testify at trial, and (6) suppress evidence obtained as a result of two searches conducted on appellant's home. The state did not oppose the first two motions but opposed all others. Following a *Rasmussen* hearing,[2] the district court denied appellant's motions to (1) compel A.M. to undergo a court-ordered psychological evaluation, (2) conduct a competency hearing of A.M., (3) preclude the admission of the CornerHouse interview, (4) preclude J.L.R.'s testimony or conduct a taint hearing, and (5) suppress evidence seized from appellant's apartment. This appeal follows.

---

[2] *State ex rel. Rasmussen v. Tahash*, 272 Minn. 539, 141 N.W.2d 3 (1965).

# DECISION

## I.

Appellant argues that "[t]he evidence presented at trial was insufficient to prove beyond a reasonable doubt that [a]ppellant sexually penetrated his step-daughter or that [a]ppellant ever made any sexual contact with his step-daughter." We disagree.

In considering an insufficient-evidence claim, this court analyzes the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the fact-finder to reach the verdict that he did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

To establish appellant's guilt of criminal sexual conduct in the first degree, the state was required to prove that (1) appellant engaged in sexual penetration with J.L.R., (2) J.L.R. was under 13 years old at the time of appellant's act, (3) appellant was more than 36 months older than J.L.R., and (4) appellant's act took place between April 25, 2010 and October 3, 2011 in Hennepin County. Minn. Stat. § 609.342, subd. 1(a); *see also* 10 *Minnesota Practice*, CRIMJIG 12.05.

4

As a preliminary matter, appellant argues that we should consider his sufficiency-of-the-evidence argument under the heightened standard that is used for evaluating the sufficiency of circumstantial evidence. Generally, heightened scrutiny is applied when an element of an offense is supported entirely by circumstantial evidence.[3] *See Al-Naseer*, 788 N.W.2d at 474. Appellant's conviction is supported by J.L.R.'s testimony, which is direct evidence of his guilt. *See Black's Law Dictionary* 636-37 (9th ed. 2009) (defining direct evidence as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption."). Therefore, we conclude that the heightened standard for evaluating sufficiency-of-the-evidence claims does not apply to this case.

At trial, J.L.R. testified that she was born on April 25, 2000 and that the abuse started when she was 10 years old and occurred at the apartment that she shared with A.M. and appellant in Eden Prairie, which is in Hennepin County. J.L.R. testified that she told her mother that appellant was sexually abusing her, and went on to recount details of the abuse by stating that appellant touched her bare chest, vagina, and buttocks

---

[3] When an element of a crime is only supported by circumstantial evidence, this court uses a two-step process to scrutinize the sufficiency of the evidence. The first step is to identify the circumstances proved, deferring to the jury's acceptance of proof of those circumstances, based on recognition that the jury "is in the best position to weigh the credibility of the evidence and thus determine which witnesses to believe and how much weight to give their testimony." *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011) (quotation omitted). Next, this court "examine[s] independently the reasonableness of all inferences that might be drawn from the circumstances proved," including those consistent with a hypothesis other than guilt. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010) (quotation omitted). If any of the circumstances proved is inconsistent with guilt, a reasonable doubt as to guilt arises. *State v. Al-Naseer*, 788 N.W.2d 469, 474 (Minn. 2010).

5

with his penis or mouth on more than one occasion. She testified that "white stuff would come out" of his penis when he touched her and that both of them had their clothes off when this occurred.

Although Minnesota law specifically provides that the testimony of a victim need not be corroborated in a prosecution for criminal sexual conduct, *see* Minn. Stat. § 609.347, subd. 1 (2012), this direct evidence is corroborated by other evidence in the record. Appellant's semen was discovered in J.L.R.'s underwear and on her bed sheets. J.L.R. also provided prior consistent statements to several people including her mother, hospital staff, and the CornerHouse interviewer. Appellant relies heavily on evidence that is apparently contrary to the verdict to support his argument, but the jury heard this evidence and rejected it. *See Moore*, 438 N.W.2d at 108 (stating that we must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary."). Consequently, we conclude that the evidence was sufficient to support appellant's conviction.

## II.

Appellant argues that the district court abused its discretion by excluding evidence of A.M.'s alleged infidelities because "[t]he excluded evidence was relevant and should have been admissible to allow [a]ppellant to present a complete defense." We disagree.

We review trial court rulings on evidentiary issues for an abuse of discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). If we conclude that the trial court erred, we must then determine whether the error was harmless. *Id.* A conviction will stand if the error committed was harmless beyond a reasonable doubt. *State v. King*, 622

6

N.W.2d 800, 809 (Minn. 2001). The error is harmless if "the jury's verdict is 'surely unattributable' to [the error]." *Id.* at 811 (quoting *State v. Juarez*, 572 N.W.2d 286, 292 (Minn. 1997)). Harmless beyond a reasonable doubt means that "the reviewing court must be satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, [a reasonable] jury . . . would have reached the same verdict." *State v. Post*, 512 N.W.2d 99, 102 (Minn. 1994) (analyzing the impact of district court's erroneous exclusion of defense evidence). But if there is a reasonable possibility that the verdict might have been different if the evidence had been admitted, then the error is prejudicial. *Id.*

Appellant argues that he was deprived of his right to present a complete defense by showing that A.M. had the motive and capability to falsely incriminate him. This argument is based on appellant's allegation that A.M. was engaging in an extramarital affair by sending romantic text messages to another man. Appellant claims that his neighbors discovered the affair and told A.M. that they were going to tell appellant about the affair on October 3. Appellant sought to introduce the following evidence:

> that there was some texting with a sexual or romantic overtone[] . . . to a man, not her husband. And that the day that she was confronted with this was October 3, 2011 at about 9 or 9:30 in the morning. And it was only then, within an hour or two of that confrontation, that she suddenly came forward, went to her daughter's school and came forward with the accusation against the defendant to form the basis of this case.

The district court ruled:

> I will allow testimony . . . that the mother and the defendant were having marital problems and that the mother may have

7

been trying to exit the marriage but maintain her residence in the country. I find that the timing of [A.C. and P.C.'s] discussions with the mother, [A.M.] are relevant in this case, so I will allow testimony which presents evidence that [A.C. and P.C.] planned to talk with the defendant about problems or issues in the marriage and their concerns on the same day that the alleged victim made a disclosure. The witness or witnesses may not, however, testify about possible infidelities, whether physical or otherwise, and may not testify about text messages or the substance of any alleged text messages.

Evidence of bias of a witness is admissible to attack the credibility of a witness. Minn. R. Evid. 616. "[N]ot everything tends to show bias, and courts may exclude evidence that is only marginally useful for this purpose. The evidence must not be so attenuated as to be unconvincing because then the evidence is prejudicial and fails to support the argument of the party invoking the bias impeachment method." *State v. Lanz-Terry*, 535 N.W.2d 635, 640 (Minn. 1995). "[T]he district court may exclude any evidence, although relevant, for which the danger of unfair prejudice or misleading the jury substantially outweighs its probative value." *State v. Larson*, 787 N.W.2d 592, 598-99 (Minn. 2010).

Appellant has not offered any evidence indicating that J.L.R. knew about her mother's infidelity or was acting to protect her mother's immigration status. Moreover, even if the district court erred by excluding the evidence of A.M.'s extramarital affair, we conclude that the error was harmless. At trial, appellant's counsel cross-examined A.M. about her immigration status in the following exchange:

Q: [Y]ou entered the U.S. in 2001; is that right?
A: Yes.
Q: And you didn't have legal status when you came here?

8

A: That's right.

. . .

Q: And you spoke with [an immigration attorney]?

A: Yes.

Q: And you discussed how you could get legal status in the U.S.; is that right?

A: That's right.

Q: And you were told that you would need to get married for you and [J.L.R.] to get legal status?

A: That's right.

. . .

Q: You weren't citizens in 2008, but you had a form of temporary legal status?

A: We were U.S. citizen. We were giving a working permit and asylum was approved later.

. . .

Q: And back in 2011 things were not going well with you and Miguel; is that right?

A: That's right.

Appellant's counsel also inquired about A.M.'s interactions with one of the neighbors who allegedly knew about her affair in the following exchange:

Q: Did [A.C.] call you on the morning of October 3, 2011?

A: I called her.

Q: Isn't it true that [A.C.] was going to have her husband [P.C.] talk to Miguel?

. . .

A: I don't remember.

Q: Specifically, wasn't she going to have her husband talk to your then husband about problems in your relationship that morning?

A: I don't remember.

Q: After you been at the house for about 20 minutes and you left, you did not take those underwear with you; is that right?

A: That's right.

Both neighbors explained that they had information about A.M. and appellant's marriage and that one neighbor confronted A.M. on October 3. They testified that this occurred on the same day that J.L.R. disclosed the abuse. Based on this evidence, appellant's counsel

was able to fully explore A.M.'s bias or motive to fabricate without the excluded evidence. Thus, we conclude that even if the evidence had been admitted and the damaging potential of the evidence fully realized, a reasonable jury would have reached the same verdict.

## III.

Appellant argues that the district court abused its discretion by admitting J.L.R.'s CornerHouse interview. Again, we disagree. "Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *Amos*, 658 N.W.2d at 203 (citations omitted). Even if the district court erred in admitting evidence, the reviewing court determines "whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *Post*, 512 N.W.2d at 102 n.2.

An out-of-court statement is not hearsay and may be admissible as substantive evidence if the declarant testifies at the trial, the declarant is subject to cross-examination, the prior statement is consistent with the declarant's trial testimony, and the statement is helpful to the trier of fact in evaluating the declarant's credibility. Minn. R. Evid. 801(d)(1)(B); Minn. R. Evid. 801 1989 comm. cmt. "[B]efore the statement can be admitted, the witness' credibility must have been challenged, and the statement must bolster the witness' credibility with respect to that aspect of the witness' credibility that was challenged." *State v. Nunn*, 561 N.W.2d 902, 909 (Minn. 1997). The trial testimony

10

and the prior statement need not be identical to be consistent. *State v. Zulu*, 706 N.W.2d 919, 924 (Minn. App. 2005).

Before trial, the district court ruled that the videotape of J.L.R.'s CornerHouse interview would be admissible if she testified and if her testimony was reasonably consistent with the interview. J.L.R. testified and was cross-examined at trial. When the state offered the videotape of the CornerHouse interview, appellant objected and the district court admitted the interview.

Appellant argues that the district court erred by admitting the CornerHouse interview because J.L.R.'s credibility had not been attacked. On cross-examination, appellant's counsel called J.L.R.'s credibility into question by asking J.L.R. about her failure to disclose the abuse at an earlier time. Consequently, we conclude that the district court did not err by determining that J.L.R.'s credibility had been attacked.

Appellant also argues that J.L.R.'s trial testimony was not "entirely consistent" with her CornerHouse interview. Based on the CornerHouse interview and trial transcripts, J.L.R.'s trial testimony and CornerHouse interview were substantially consistent. Consequently, we conclude that the district court did not abuse its discretion. *See In re Welfare of K.A.S.*, 585 N.W.2d 71, 76 (Minn. App. 1998) (stating that the admission of reasonable consistent statements does not constitute reversible error).

**IV.**

Appellant argues that the district court abused its discretion by denying his motion to compel A.M. to undergo an adverse psychological evaluation. We disagree. The district court has discretion to regulate discovery in a criminal case by restricting time,

11

place, and manner. Minn. R. Crim. P. 9.03(3). Generally, "[c]ase law supports a concern about possible harassment of, or harm to, victims through adverse examinations." *State v. Cain*, 427 N.W.2d 5, 8 (Minn. App. 1988).

Appellant brought a motion to compel an adverse psychological examination or competency hearing of A.M., claiming that because A.M. could not keep a job, was having marital difficulty, and was a victim of childhood sexual abuse, she "had the motive to falsely incriminate [a]ppellant," and these factors strongly indicate that A.M. lacked capacity to tell the truth. The district court denied this request, stating,

> [Appellant] confuses the [s]tate's obligation to disclose evidence and in some cases to even gather evidence, with an obligation to create evidence. The [s]tate does not presently have this evidence, nor could it, on its own, force A.M. to undergo an evaluation. In fact, the only way the state could accomplish what [appellant] is requesting is by doing exactly what [appellant] has done, and that is to ask the [district] [c]ourt to compel the witness to undergo evaluation. A.M. is a witness for the [s]tate. She is not a representative of the [s]tate. [The district court] is unaware of any legal precedent under *Brady* or otherwise, which requires the [s]tate to subject its witnesses to psychological evaluations.

At trial, appellant had the ability to call A.M.'s credibility into question without an adverse psychological evaluation. The district court noted this point by stating, "Nothing in this order prevents [appellant] from properly impeaching A.M. for her character for truthfulness or her motive to lie." We conclude that appellant had not shown that the district court abused its discretion by denying his motion to compel an adverse psychological evaluation of A.M. or that he suffered undue prejudice as a result.

## V.

Lastly, appellant argues that the warrantless search of his apartment was unlawful because A.M. did not have the authority to consent to the search and that the district court erred in denying his motion to suppress evidence obtained as a result. We disagree.

"When reviewing a pretrial order on a motion to suppress [evidence], we review the district court's factual findings under our clearly erroneous standard." *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012) (citation omitted). We review the district court's legal determinations, including the existence of actual or apparent authority to consent to a search, de novo. *State v. Thompson*, 578 N.W.2d 734, 740-41 (Minn. 1998).

Both the United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "The Minnesota Constitution protects citizens against *unreasonable* government intrusions upon areas where there is a legitimate expectation of privacy." *State v. Davis*, 732 N.W.2d 173, 178 (Minn. 2007). To determine whether the constitutional prohibition against unreasonable searches and seizures has been violated, this court examines the specific police conduct at issue. *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008).

"It is well-settled law that individuals have a reasonable expectation of privacy in their own homes and thus have the capacity to challenge warrantless entries and searches of their homes." *In re Welfare of B.R.K.*, 658 N.W.2d 565, 572 (Minn. 2003). A warrantless search of a private residence is per se unreasonable. *Id.* at 578. Generally, a warrant is required to conduct a search unless the state can show that an exception to the warrant requirement exists. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001). A valid

consent to search is an exception to the warrant requirement under the United States and Minnesota Constitutions. *Thompson*, 578 N.W.2d at 740. A third party has actual authority to consent to a search if that person has common authority over or other sufficient relationship to the premises or effects sought to be inspected. *State v. Licari*, 659 N.W.2d 243, 250-51 (Minn. 2003). Common authority requires

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* (emphasis omitted).

Appellant and A.M. both signed the lease for their shared apartment. A.M. and J.L.R. stopped staying at the apartment they shared with appellant and his two sons after October 3. On October 5, an officer obtained a search warrant to search the apartment. Officers executed this search warrant on October 5 and subsequently changed the locks to the apartment. A sergeant with the police department retained the key.

After executing the search warrant, officers were unable to locate the pair of J.L.R.'s underwear that they were looking for. A.M. told an officer that she could show them where the underwear was located. A sergeant had A.M. sign a consent to search form, and A.M. and the sergeant went to the apartment. The sergeant used his key to enter the apartment and located J.L.R.'s underwear in the location where A.M. said they would be.

The record in this case indicates that A.M. had actual authority to consent to the search because she had mutual use of the apartment. A.M. was a leaseholder of the apartment and had been living there with her daughter until October 3, when J.L.R. disclosed the abuse. Appellant notes that A.M. was not residing at the apartment when the consent search occurred. But she still had personal belongings at the apartment and apparently only left the apartment out of concern for J.L.R.'s safety. We therefore conclude that A.M. had actual authority to consent to the search of the apartment.

Even if A.M. did not have the actual authority to consent to the search, it appears as though the officers reasonably relied on her apparent authority to consent to the search. Where there is no actual authority to consent, a search will still be upheld if the person granting consent has apparent authority, which is judged under an objective standard. *Id.* at 253. Although it may prove erroneous, an officer's belief that a third party has authority will be upheld so long as it is reasonable. *Illinois v. Rodriguez*, 497 U.S. 177, 185-86, 110 S. Ct. 2793, 2800 (1990). Here, the officers believed that A.M. had the authority to consent to the search based on the following facts: (1) she was listed on the lease as a leaseholder, (2) she had been living at the apartment until October 3, and (3) her belongings were still in the apartment. It appears as though the officers reasonably believed that A.M. could give consent to search the apartment. Consequently, the district court did not err by admitting the evidence obtained as a result of the search.

**Affirmed.**